Opinion op the Couiit.
Chiles, the appellee, under the act of assembly regulating the fees of clerks, 1 Dig. L. K. 563, put into the hands of the circuit judge, a large fee-bill, amounting to $67 43, issued against him by the plerk of the circuit court for the county where he resided, suspecting that it contained illegal items, and charges for which no services were rendered, and required it to be inspected and quashed by the judge, as the act directs. The court proceeded to make a rule on the clerk, and he appeared and waived the rule, and made his defence, contending that the act was unconstitutional, and that the items were correct. The court, after hearing the parties, determined that there were sixty-five ilíégal and improper items in the fee-bill, for each of which it imposed the fine of one dollar, and ordered the clerk to restore the whole money collected on the fee-bill.
It has been contended in this court, that the act under which these proceedings were had, is unconstitutional, and that of course the court ought not to have proceeded to rendér judgment. The section of the act under which these proceedings were had, is to the following effect: “ If any person or persons sháll pay any fee-bill or fee-hills, in which he may suspect or believe, that there are some erroneous charges or items, or that such fee-bill or fee-hills shall contain items for services not actually rendered, or that such fee-hill or fee-bills do not comport with the law in every respect, he, she or they may l^pnd such fee-bill or fee-bills to the circuit judge who presides in the county where the person or persons having paid said fee-hills r®side, either in vacation or term time, as may be most convenient; and thereupon the said circuit judge shall inspect said fee-bill or fee-bills, and' if there shall be any item or charge contained in said fee-bill or fee-bills, or any of them, not authorised by law, or any item for services not actually rendered, or if the name or names of any of the parties chargeable with such fee-bill or fee-hills shall be omitted, or said fee-bill or fee-bills shall not comport with the law in every respect, the said circuit judge, at *196 tbe next circuit court hohlen for said county, if be shall have received said fee-bill or fee-bills in vacation, or at the same court, if he shall have received them in term time, shall, without any notice to said clerk, proceed to quash such fee-bill or fee-bills, and to order the cleric to restore the money which has been paid for the whole of said fee-bill or fee-bills so quashed, and shall further proceed to fine the clerk who has issued such erroneous fee-bill or fee-bills, in favor of the party so having paid the same, in any sum not less than one dollar nor more than fpur dollars, for such item so improperly charged.”
íhe Iff®, and tttli actions article of the constitution, applies to misdemeanors prosecuted by the po-Vubbo n> f ,r §ress,°andnot w my pro-the bMiefit'i f ie {. er i. juved by the ine6ai eci.
There can be no pretext, in this case, for contending that the act is unconstitutional, because it tolerates these proceedings ex parte and without notice; for the judge of the court below, in this case, refused to proceed, until he had previously made a rule against the clerk, to show cause why such proceedings should not be had against him. The service of this rule was waived, and the clerk appeared and made every defence be could, if that part of the act be unconstitutional, the objection was waived in this instance, and cannot now be relied on.
1. Different clauses of the constitution of this state have been cited, in the investigation of this case, as con-dieting with the act in question; among the rest, thq ^ncl sections of the 10th article, which provide, “ that in all criminal prosecutions, the accused hath a right to be heard by himself and counsel ; to de~ mancl mature and cause of the accusation against him; to meet the witnesses face to face; to have corn-pulsory process for obtaining witnesses in bis favor; and in Proshcutions by indictment or information, a speedy public trial by an impartial jury ofthe vicinage. That be cannot be compelled to give evidence against him-se'^> nor can ke ^ePrive<l °f his fife, liberty or prop-e!q_y? unless by the judgment of his peers, or law ©f the land.” The 11 th section provides, “that no person shall, for any indictable offence, be proceeded against, criminally, by information, except in cases arising in the lapd and naval forces,” &c.
It is plain to be seen on the first inspection of these sections, that they apply exclusively to criminal cases and public prosecutions; that is, to proceedings where tbe government is a party, and demands of the accused that redress which is due for an offence against th§ *197 public. All the restrictions imposed, and privileges se* cured by them, can only be made use of by a person standing in that attitude, and cannot be used to shield him who is impleaded for a civil injury, and of whom individual redress alone is required.
It will be conceded, that the words, “ criminal prosecutions,” do, in these clauses,' include all proceedings for offences against government, for misdemeanors only, and penalties imposed by statutes, on account of mala prohibita, as well as the higher grades ofcrimes, termed felonies and treason. It is also granted, that the act in question is highly penal and severe in its provisions, and that the matter for which the appellant has been called in question, is that misdemeanor, which, at common law, was peculiarly styled extortion, for which an indictment could be maintained, and fine and imprisonment inflicted. See Hawk. Pl. Cr. title Extortion; Co. Lit. 3G8 b.; 2 Chit. Crim. Law 273-4, in note, and authorities there cited.
But notwithstanding these concessions, it is denied that the remedy furnished by this statute is of a criminal character. It is only individual redress afforded to the party injured, and as such, the proceedings are purely of a civil character •, a.nd all the penalties or punishments to which the party would be liable, in a public prosecution, might he inflicted, as if these proceedings had never existed. The legislature has not, by any provision of this act, given any express discharge or release from any punishment at the suit of the government. If, then, such release exists, it must be found in some other statute or law, or arise by necessary result from some legal provision. As to its arising from’some other statute or law, the only statute which could he plausibly relied on, is that which provides that where inodes ofprosecuting and punishing offences are provided by statute, those modes provided by common law shall cease to exist. This statute must, however, be construed still to apply to prosecutions in behalf of .the government by statute and common law, and not to give birth to the principle, that the provision for individual redress shall abolish the governmental prosecution, or that provision for the punishment of an offence in a public prosecution, should destroy the right of redress for individual injury, resulting from the same offence; otherwise the provision which punishes by statute, *198 riofrs, routs, unlawful assemblies of the people or breach* es of the peace, would destroy all actions of trespass, assault, battery, &c. which the person particularly aggrieved might have; which never can be supposed.
Neither can the exemption from legal punishment arise from the common law 5 for where the common law affords a remedy to the government, to punish an individual for a crime, and the legislature by statute shall also affix a more severe punishment, it is a well settled principle, that the common law punishment still exists, and is not repealed by implication. If this rule holds between a public prosecution and punishment by common law, and that by statute, it is still stronger between a civil, individual injury, redressed by statute, and the common law mode of prosecution and punishment for the same offence, at the suit of the government. If the legislature should provide by statute, that every person committing an assault, and sued by the person, assaulted,Imd found guilty thereof, should pay $1,000 damages to the plaintiff, it could not be pretended that it would affect, or relieve from, any punishment by indictment for the same, breach of the peace. Indeed, all the provisions of the common law criminal code are against such a result. It is true, the common law, in public prosecutions, allows of the pleas ofautrefois acquit, and autrefois convict; but those pleas must set forth a conviction or acquittal, on a valid indictment or information, at the instance of, and in the name of the government; and not an instance can be found, of a plea alleging an acquittal or conviction in an action for redress of the individual injury.. See 1 Chit. Crim. Law 453-461. Indeed, the decisions at common law, upon statutes inflicting punishment for the crime at the suit of the goverment, and directing the quantum of individual remuneration in the same section, have generally kept the remedies distinct, and decided that the accused was liable to both, or either, in their respective forms -and modes of recovery. This was the case respecting the statute 9 Anne c. 14, sec. 5, 6, which enacted, that any person who should game fraudulently, and thereby win over ten pounds, and be convicted thereof by indictment or information, should forfeit five times the value thereof, and suffer such punishment as in cases of wil-. fill- perjury, “ and such penalty to be recovered by such person as shall sue for the same, to be recovered by suck: *199 action as aforesaid.” It was decided, on this statute, that after conviction by indictment or information, the court would not give judgment for “Jive times the amount won” but merely “ quod convictas est and an action must be brought on the judgment for the recovery of the forfeiture. 2 Stran. 1048, 3 Chit. Crim. Law 682, note S. C. And also by the statute 3 Edw. 1, cap. 16, for extortion, (the very offence now under consideration,) the defendant convicted was subjected “ to render double to the party aggrieved, and be punished at the king’s pleasure.” In the construction thereof, it was held, that the doable value could not be recovered by an indictment; but must be sued for by an action, and the justices pronounce the sentence of punishment “ at the king’s. pleasure.” 2 Chit. Crim. Law 293, note, and authorities there cited.
Where the sum to be recovered could be ascertained from an examination of an act of assembly or a written contract of the parties, no jury was necessary to ascertain it by the' law of Virginia, nor is under the constitution of Kentucky.
Thus have the criminal and civil remedies been kept carefully distinct by the spirit of the common law, and however greatly the legislature might enhance either the one or the other, the remaining remedy was not affected. Hence we conclude, that the proceedings directed by this statute, are for the redress and remuneration of- the individual injury only, and that the afore recited clauses of the constitution do not apply; ■ that the penal punishment, at the suit of the government, is not impaired or affected, and that if ever the appellant is questioned or impleaded in that way, then, and not before, can these clauses operate in his favor.
2. It remains to enquire, whether any constitutional provision, operating upon civil suits or actions between individuals, affects the case. Here, the 6th section of the 10th article is relied on: “The ancient mode of trial by jury shall be held sacred, and' the right thereof remain inviolate.” This, we observe, was insisted upon in the court below, and the appellant there demanded a jury to try his case, and it was denied.
As to the fine imposed upon each illegal item of the fee-bill, in any sum not less than one nor more than four dollars, we apprehend it cannot be affected by the clause of the constitution now relied on. The court must adjudicate on each erroneous item, and annex the penalty to each. If these items are few, the aggregate sum cannot exceed five pounds; if they are many, the aggregate may go beyond it. Five pounds is a sum to which a court might go, at the adoption of our constitu *200 tion, without a jury, and of course may yet exercise thd same Power* Can the right of the court, then, to proceed without a jury, be affected by the number of illegal items presented at the same timé? Or is each item a distinct offence, and to be so considered, although many áre presented at once? The latter is the correct mode of testing the matter. The adjudication is on each, and if only one is illegal, the motion is sustained. Ought the defendant in such motion, by the repetition of so many distinct offences, oust the court of a right to proceed on each separately ? Certainly not. And after the court had ascertained the whole number, it could not be wrong to unite them into an aggregate sum, and embrace them in one judgment, without the intervention of a jury. Supposing the presentment of a grand jury, against the same person, should include twenty or more distinct offences, in retailing spiritous liquors without license, at different times, as so many distinct counts in a declaration, and the court should proceed to hear each charge scparately,.and acquit the offender of some, and convict him of as many as would amount to more than five pounds; we do not conceive that it would be necessary to empannel a jury on this event. Nor could it be more so in the present case, which is analogous to the case supposed, in every essential feature, except that would be a criminal proceed-ure, in which the right of trial by jury is more strictly guarded.
Whether a clerk issued a íeh¿herIthet, services were performed, and whether the amount hásbecn paid, are facts, which, “"uitituiion of Kentucky, may rightlul-^tothe^de" c¿¡on 0f the court, with-°ut tll0.in‘ a°juvy.lon °
*200 The right, then, of the party to a trial by jury, must essentially turn on the right of the court to proceed to quash the fee-bill and direct the restoration of the whole sum included therein.
As decided by this court in the case of Carson vs. Commonwealth, 1 Marsh. 290, cases of the description which were triable only by a jury, at the adoption of the constitution, must remain triable in the same way, by the clause now under consideration. Is this of the description required?
3. As the law stood before the adoption of the con-slitution, cases of uncertain and unliquidated damages, where an issue was formed, were generally triable by jury. Hence, in an action of tort, sounding purely in damages, juries are usually called to fix the amount; but in cases of debt or covenant, where the amount is liquidated by the act or deed of the parties, and it is *201 said by some books, on all writs of inquiry, üo jury is absolutely necessary; but a court may proceed without them, and include the interest in damages, where the law has fixed the rate. This case is of the latter de~ scription. The amount was liquidated by the fee-bill itself, as well as the damages consequent, and nothing could have been left to the control of a jury in this re-speef; and as such, it may be classed among that description of cases where a jury was not required, even if it be admitted, which is not so certain, that a jury was necessary to fix damages, in all uncertain cases.
. 3. Nor could it be necessary or proper, that a jury should judge of the legality of the fee-bill, or propriety of quashing it» This was a question purely legal; and It is a principle, ripened into a maxim, that the court responds to the law, and the jury to the facts. The court, therefore, in determining the lav/ of the case, kept within its own province, in cases where neither facts nor amounts arc uncertain, the court is Sound to decide. Legal pleadings are a species of logic, in which the parties are compelled to state their respective premises, and either tacitly or expressly to-admit the facts as stated, until they arrive at some contested fact'or facts, which one affirms and the other denies. This forms an issue, to which the jury responds; and in most cases of this description a jury was necessary at the date of the constitution, and remains so still. And in cases where the parties admit the facts by agreed case or demurrer, the court must decide, and a jury has nothing to do. This will enable us to determine in what description of cases the right of trial by jury is indispensable under the constitution, and as a general rule, will be applicable; but not asan universal one, for there were some well founded exceptions to the rule at the date of the constitution, where courts, and not juries, were bound to determine disputed facts, such as controversies in chancery and cases where sheriffs or other officers were to bte tried and punished for the violation of their duty, or in executing the process of the court, as decided in the case of Wells vs. Guldwell, 1 Marsh. 441.
Was there then any fact in this^ase which could he so. contested as to render a jury necessary? And if so, \\ ere the fact,, and the controversy, and parties of such a na-. ture that a court, without the assistance of a iurv, could *202 not have tried it at the date of the constitution? It is contended there is such a fact, or rather facts; and they are two, to wit, whether the fee-bill was issued by the clerk, or by his authority, and had the appellee paid it? These, it is contended, the clerk had the right to contest and dcnjr; that the emanation and collection of fee-bills are matters en pais, and not of record, and therefore are facts of that nature which ought to be found by a jury, as other matters of the like nature. This, it must be admitted, is the strongest point in favor of the appellant, and it will now be considered.
The laws of Vivginia at’ tiio s'oara-fiera, permitted the courts t0<-1 mmary1 way”vithout re- ~`i1ting ficrn the flog 1-gence) fi1Th foasance or rn~1feasanco of their oil- ccl's; con~e- quently, laws similar in spi-i'it and opern-~ ration passed by J(ent~scky, are cot un-constitution- aL by J(ent~scky are cot un constitution aL
*202 It is true, a fee-bill is not, strictly speaking, matter of record; but it is based upon it, and the law speaks of it, directs its form and substance, makes it an authority in the hands of the collecting officer to distrain and sell, and the law speaks of the fee-book of the clerk as a quasi record, in which must appear the accounts or items composing ljis bills. It is, then, a quasi official paper, attested by the clerk, and as such is evidence per se, that he has issued it, without further proof. It is true, it is not to be returned as an execution, and its return recorded; but it is to fall into the hands of the person against whom it is issued, and there its very existence is to be evidence that he has paid it. It is, therefore, very questionable, whether the genuineness of the bill, or the fact of its being paid in the hands of him against whom it issued, are facts per se of a nature so contestable or doubtful, as to take them from the decision of a court, a,jd leave them only determinable by- a jury, in this proceeding. Of such facts and official papers courts may take notice, and determine upon them in many instances, not necessary to be enumerated. But, however this may he, we arc of opinion, that offered in such a contest, and against an officer of the court, they might be determined upon by the court, without infringing the constitution, and that for these additional reasons:
4. The clerk is an officer df the court, and, as the right ha$d thereof, is to record its proceedings, and execute its orders, and issue its process. Such officers are generally amenable to the court, witjiout the intervention of a jury, not only for not doing, or for doing wrongfully, official acts, but also for abusing their privi^°§es *-° extortion. Such has frequently been the case with sheriffs, and even counsel, and there is no good *203 ~cason can be assigned why a clerk shall be an exception. Against a sherifl facts en pals, proved by parel, n~aybe tried withoi~t a jury, and that from necessity, because the court ought to have, to subserve the ends ofjustice, a direct and summary control over all the officers of the court itself.
J~y the common Jaw, which recognized the trial bj jury to a great extent, and which Blackstone pronounce~ a stranger to summary convictiofls, and to preserv which inviolate, in this respect, was the design of thi~ provision in the constitution, such convictions were lowed, with regard to officers of court. Blackstone, it his Commentaries, 4th voL 283, among offences Ibi which an attachment mi~ht issue, and which admitted of summary conviction, without jury, `recites "those committed by sheriffs, bailiffs, jailers, and other officers oj the court, by abusing the process of the law, or dcceivin~ the parties, by any acts of oppression, extortion, collusiv behavior or culpable neglect of duty; and those corn mitted by attori~oys or solicitors, `who are also officea of the respective courts, by gross instances of fraud ant corruption, injustice to their clients, or other dishoncs practice." For," he adds, "the mal-practice of the ofli cers reflects some dishonor on their employers; and i, frequent, or unpunished, creates among the people disgust agah~st the courts themselves." In the same chapter, he shows, that'this proceeding was by common law, had did not depend upon statute~ For he states~ "that this process, for these and the like o~Tences, inusi necessarily be as ancient as the laws themselves.' And after citing an author who seemed inclined tc base it on statute, alleges that the same author" after-wards morejustly concludes that it is a part of the law. ~f the land." He further alleges thai; "attachments foi~ most of this species of contempts, and especially for nonpayment of costs, and non-performance of awards, is to he looked upon rather as a civil execution for, the benefit of the inj ured party, though carried on i1~ the shape of a, criminal process for a contempt of the author~ity of the court; and therefore it hath been held, that such con-tempts, and the process thereon, being properly. the civil remedy of individuals for a private injury, are nqt released or affected by a general act of pardor~."
Hawkins, in his Pleas of the Crown, 2d vol. chap. 22, p~occed- v. CIZILES,. the interven' tion of a *204 ing is allowed, says, “ it seems dear, from the general reason of the law, which gives all courts of record a kind of discretionary power over all abuses by their own officers, in the administration or execution of justice, which bring a disgrace and contempt on the courts themselves, as not taking sufficient care to prevent it,5’ that the court may punish such offences “ in such manlier as shall seem proper, by attachment,” See. In enumerating the offences for which such officers are liable in this mode, without jury, he .«peaks of being bribed to do duty, and refusing to do it unless paid an unusual gratuity. With regard lo attorneys, he names the offences of “ injustice to their clienls, base and unfair dealings towards their clients in the way of business, as for protracting suits, by little shifts and devices, in order to raise (heir bills; demanding fees for business which never was done; refusing to deliver up writings, or pay money collected; and any ill -practice against the. known and obvious rules of justice, and common honesty All which, are specified as offences for which a summary conviction may be bad. He then says, as to the case where the court may proceed in like manner against other officers of the court, except sheriffs, bailiffs and attorneys, of which he had spoken in detail, “ that there, being scarce any thing of this kind to be met with in the books, I shall only observe, that it seems clear, from the general reason of the law which gives all courts of record a kind of discretionary power in the government of their own officers, that any such court may proceed in such manner against any such officer, not only for refusing to execute its commands, or for executing them irregularly, remissly or oppressively, but also for all kinds of oppression or injustice done by them in the exercise of their offices, or by colour of them.” It is, then, on this princi-ciplc of the common law, that the legislature of Virginia, and also of this stale, have subjected counsel or attorneys to motion and judgment for money collected and not paid over; and not only sheriffs in this state, but coroners and constables, are subjected to summary proceedings for acts done under colour of their office, when against the same offences we find no statute cf Virginia dispensing wi(h a jury and authorising summary proceedings. If the consliiuiion confines the legislature to the trial by jury in all cases against officers of court, where no previous proceedings were direct. *205 ed, it would follow, not only tbat summary proceedings could not be adopted for new or other acts of mal-con-duct in office, which has been frequently done; but also, that if the leg islatu fijpch an ge d the penalty, or increased the sum to be recovered in a summary way, beyond what existed before the constitution, the proceedings could not be had without a jury. It is not, then, a correct principle, that the legislature must confine itself to the same offences, and the same amount of punishment without a jury, and that within that limit only it is allowed to provide for summary proceedings against attorneys, counsel, sheriffs, coroners and constables; but it is done on the ground that they are officers of court, or concerned in the due and direct administration of justice, and that the acts for which they are made thus liable, are acts of mal-administration done colora officii. On these officers and these acts, the legislature, according to the principle adopted in the case of Wells vs. Caldwell, before cited, may act without requiring rrjury. What good reason can there be assigned for exempting the clerk from the same power? In case of revenue collected by him, he is thus made liable, and why? Because he is liable for a subject and an offence as an officer, t© which the right of trial by jury was not reserved by the constitution. He is a direct and immediate officer of court, concerned deeply in the due administration of justice, with the opportunity and temptation often presented, of extorting for his services more than is legal. He has a privilege, extraordinary indeed, of issuing in substance an execution for his fees, without the forms of original process, or the sanction of either judge or jury. He issues his bills for recording the very acts of the court and completing its records, and by colour of office alone, and in the direct exercise of it, he commits the very offence under consideration. If, then, for the same offences, or those of a similar nature, he could have been subjected, as we have seen, to summary proceedings, by the common law, before the adoption of the constitution, has the legislature violated the constitution in subjecting him to' a civil remedy for the same offence, without subjecting his body to arrest by attachment? ‘ Executions issued by him, and the returns thereon by sheriffs, may be quashed and annulled without jury, after a litigated trial of facts, and restitution awarded; why, then, may *206 not his fee-bills, which indeed are not returned to court, but dropped around into the hands of those who paid them, be likewise brought back and examined, to ascertain, without jury, whether'Ute has abused official privileges? If this reasoning is not conclusive, it renders the question too doubtful, to decide against this act. We, then, yield to its constitutionality, reserving for questions more clear, and those in which our minds may be under a stronger and more decided conviction, the exercise of that always disagreeable, and sometimes delicate duty, imposed upon us, of deciding acts of the. legislature to be unconstitutional and void.
We have come to this conclusion, as to the main question, and nothing remains but the details of the fee-bill, on which the court below has adjudicated. Here we feel relieved from the trouble, by the elaborate opinion of the court below, on every disputed item, in which we concur throughout; and we can recommend, it to the Reporter of the opinions of this court, as wortW of publication, with the fee-bill on which it descari* and to all concerned in the subject, as an excellent comment on the statutes regulating the fees of clerks.
The judgment must be affirmed with damages and costs.

The following is the opinion of the Circuit Judge, approved by the Court of Appeals in the preceding opinion..

Opinion op the Montgomery Circuit Court.
THIS is a motion to quash a fee-bill, under the 6th section of the act regulating clerks’ fees and for other purposes, approved February 4th, 1817, and for the penalties given by said act.
Although the 6th section of this act' authorises an application to the court, to quash a fee-bill, without giving notice to the clerk; yet justice requires, before the motion is heard, that the clerk should be so specially apprised of the grounds upon which it is made, as to enable him to prepare for his defence. The court accordingly intimated to the parties, when the motion was made, that a rule should be entered on the record against the clerk, returnable to some particular day, to *207 ■show cause why the •’fee-bill should not be quashed, upon the grounds speciaj:3|j|Set forth in the rule; but as a rule, in this cas<g, was waived by consent of the parties, the court has proceeded to hear the motion without taking that step.
The plaintiff in the motion has objected to a number* of the charges in the fee-bill, on the ground, that they are not authorised bylaw; and to others, because the services for which the fees are charged, have not been rendered. I will first examine the charges which furnish the first grounds of objection.
The first item charged in the fee-bill, to which an exception has been taken, on the ground that the charge is not allowed by law, is for endorsements on subpoenas for witnesses, sent to other counties than that from whence they issued, showing the time when the court sits. There appear to be three several charges for certificates of this kind. The clause of the fee-bill law under which this charge has been made, is the following: “For each official certificate, &c. 25 cents.” Unless it is by law made the official duty of the clerk to perform this service, he can have no more right to charge for it, than for certifying any other fact, which he is not required to certify. The law fixes the time when the courts sit,, and it has made no provision that the clerk shall certify what all are presumed to know. If the party takih'gs’dut a subpoena for a different county, apprehends thafit maybe necessary to give information to the witness when the court sits, he may give the information by endorsing the subpoena; but he has no right to procure another to do so for a fee, and make his opponent answerable therefor.
The next' charge objected to, is for making a motion in court. Eight distinct charges for this service have been made, and there is certainly nothing in the fee-bill law to authorise them, no fee having been allowed for entering a motion. Nor does the law allow any fee forfiling an affidavit. This charge has been made but once.
The next charge alleged to be illegal, is an order awarding a writ of possession, upon entering a judgment in ejectment, in a case in which commissioners have not been appointed to valué improvements. It is clearly unnecessary to make an order in a case of this kind, as the plaintiff in ejectment has a right to a writ *208 of possession, without any order i?f court for that put'pose. But as this order hateen made-of record, and consequently approved by the court, ,,the clerk, who is. a ministerial officer, and bound to malte all entries directed by the court, has clearly a right to charge for the order. It is the duty of the court to prevent unnecessary orders being entered on the record; hut if such should be entered, the. clerk is entitled to his fee therefor.
The next items objected to, are for an order, judgment and taxing costs, founded upon a motion of the defendant for a continuance in the suit Chiles vs. Dcd-man, and which was continued at the defendant’s cost. After the order of continuance, follows a judgment in favor of Chiles, for his costs expended, &,c. That it was improper to enter a judgment in this, as in all other cases of a continuance for either of the parties, I have no doubt. Prior to the statute of January 1812, an executioii could not issue for the costs of a continuance, nor could a judgment be legally rendered therefor. That statute does not authorise the courts to render judgment for the costs of a continuance; but simply permits the adverse party to sue out execution for his costs incurred in consequence of such continuance. In most cases where witnesses have not been summoned, particularly in chancery, causes are continued without any costs having been incurred, except in making the order of continuance. That should be charged, in all cases, to the party who moves for the continuance: and an execution should never issue, except where the opposite party has actually incurred some costs properly chargeable to him; for there lie can enforce payment, either by attachment at the common law, or by taking out execution for the costs by him expended at the term, though no judgment shall have been entered in bis favor. The continuance being at the costs of the party applying for it, entitles the opposite party to his costs, as a necessary consequence, and he may enforce the payment, at his election, by proceeding under the statute or at the common law. But although I am clearly of opinion that no judgment ought to be entered upon a continuance of the cause, for cither parly'; yet, for the reasons assigned in relation to the order for a writ of possession upon a judgment in ejectment, I am of opinion the clerk has a right to charge for entering *209 the judgment} when iruact a judgment has been rendered — the judgment being the act of the court, and the ó),£rk being efttjtled to a fee “for every judgment.” But,:$g- clearly has no right.to charge Chiles with the order of continuance; because that is a service which was rendered for Nedman, on whose.'motion the cause was continued, and not for Chiles. Nor' h'as he a right to charge for taxing costs upon a judgment rendered on a continuance; because the law only allows a fee for “ taxing costs in every suit where costs are recoverable.” This clause shows that thhre is to be but one taxation of costs in each suit, and that must be where costs are accrued by the final judgment. I am, therefore, of opinion, that the charges for the continuance, and for the taxing of the costs in this case, are illegal. There are seven charges of this kind for costs of continuance, all of which are unauthorised.
The next item in the fée-bill-, which is alleged to be Illegal, is this charge in the suit Chiles vs. Stephens: Order of continuance, 25; continuance, 25.” The entry on the record is in the usual form of a continuance: and it is perfectly clear, that the clerk has a right to change for one order only. He is allowed a fee of 25 cants for every order of continuance in the management of a cause, containing the whole entry in one order, and not including any entry required by law, for which a fee is specially flowed. This charge occurs nine times, and in each "instance there is a charge for an order not authorised by law.
The next item objected to, is for oaths administered to witnesses, 36 cents, in the case of Chiles vs. Botts. This charge is made under that clause of the act of February 1817, which gives a fee of 18 cents for administering an oath in court, not relating to the trial of any cause then depending, and certifying the same. It was contended that this charge is authorised by law, because the oath did not relate to the trial of the cause there depending. But the fee is only allowed where the oath is not only administered, but also certified. The law evidently has reference to the case of affidavits and other papers sworn to and certified. The fee is given for both-these services, and cannot bo charged for the performance of one only. It cannot have refe¡ence to oaths administered to witnesses, who claim their attendance as such. The clerk is allowed a special fee *210 for every order allowing the attendance of witnesses, and the oath administered to them is a part of the service for which he is allowed the compensation. He is also allowed- for a copy of auch order, when furnished. To charge, therefore, for an oath and certificate, and also for entering the attendance of the witness, and a copy, would he manifestly charging twice for the same service. The charge of administering an oath to a witness or witnesses, occurs twelve times, and each oí these charges is considered illegal.
The next charge alleged to be unauthorised, is for making a complete record in an ejectment cause, Chiles vs. Boils, the record not having been actually made out. The clerk justifies this charge upon the ground that the law makes it his duty to make out a complete record in every land cause, and of his not having had time to do so before the execution issued in favor of the plaintiff for this, among his other costs. It is not necessary, and would be improper, for the court to decide, in this ■case, whether the costs for a complete record can legally He inserted in an execution in favor of the plaintiff, before he lias actually incurred those costs. However this may be, it is perfectly dear that the clerk has*no right to charge for thi-s service, before it is actually performed. The making of the complete record in this cause, alluded to, was for the benefit of Chiles; and it would be improper, in every point,of view, to compel him to pay for the complete record before it is made out. If he can be compelled to pay for the service before it is rendered, how is he to enforce upon the clerk a compliance with his duty in this respect? After having received the fee for the service, he might forever neglect its performance, and thus leave the plaintiff in ejectment and the complainant in chancery, who have obtained a judgment or decree for land, without that security for their land titles, which the legislature have supposed would result from preserving a complete record in cases of this kind. In addition to these objections to this charge, it may be remarked, that the law allows the clerk, in no case-, to issue fee-bills, except for Services actually performed. The law gives clerks of courts the right to issue their own fee-hills, and to enforce them by the summary mode of distress. It would he most unreasonable, to add to these prerogatives the right to issue them, in any case, before the service for *211 which they issue is actually performed. This charge occurs twice, and both are unauthorised by law.
The next charge objected to, is for filing a declaration and docketing an ejectment, 26 cents. The law allows no such fee. It should have .been charged, filing declaration 10 1-2, docketingS, making 18 1-2 cents, instead of 26 cents. This charge occurs three times, and are all overcharged, and for that reason illegal.
The charge for a copy of a judgment, &c. Chiles vs. Conley’s heirs, and certificate, 75 cents, is illegal, because the services included under the &c. are not stated, and because a charge for a certificate is not allowed, when it is attached to copies of papers, records, &c. the copy of a judgment being the copy of a record.
The charge for a copy of a deed and certificate, 25, Davis to'Young; same; deed to Jamison and certificate, 25; same, deed to Clements and certificate, 26; same, deed to Ringo and certificate, 25 — each carried out one dollar; same, power of attorney to Twyman and certificate, 75, are ail illegal; first, because the law does not allow a charge for an official certificate, when attached to copies of papers or records, or conveyances, or endorsements on papers filed in the office; secondly, because these charges are made by the clerk of the circuit court,yvhen no such services have been rendered by him as Such, and he has no right to. collect his fees as clerk of the county court, (in which capacity these services were rendered,) but upon fee-bills made out by him as clerk of that court.
The charge for an order to record exceptions, Chiles vs. Stephens, is' illegal; because such order is wholly unnecessary, and because there is in fact no such order, on the record.
The charge for attorney, 8, upon entering an opinion of the court of appeals, Chiles vs. Patterson, would have been illegal, if there had been a previous entry of the appearance of Chiles in proper person or by attorney; but as this does not appear to have been done, this charge is deemed legal.
The charge for a joinder to a plea, or similiter, in the suit Chiles and Patton, is illegal; because the clause of the fee-bill law which gives 10 1t2 cents for each branch of pleadings, expressly excepts the joinder in issue.
*212 The charge of 50 cents for copying a bond, Bridges to Hays, is not authorised, the law having given no such fee specially, and if charged for under the clause which allows 1 1-2 cent for every 20 words, it should have been made so specially as to enable, the party who received the copy to ascertain whether the charge was correctly made or not.
The illegal charges already remarked upon, are fifty-four in number. In addition to these, upon a careful examination of the facts, as I noted them during the trial, I find there are eleven' charges contained in the fee-hill, for which no services were found to have been rendered; he whole number of illegal charges is, therefore, sixty-live. Under these circumstances, the law makes it the imperative duly of the court to quash the fee-bill and order the clerk to restore the money which has been received thereon. If the court were not limited in its discretion, as to the fine to he inflicted, I should feel disposed to make it a reasonable one; but the law having declared that it shall not be less than one dollar for each illegal charge, the fine to be entered must be sixty-live dollars.
It is therefore considered by the court, that the plaintiff recover of the said defendant the sum of sixty-seven dollars and forty-three cents, and also the sum of sixty-five dollars, the fine aforesaid, together with his costs herein expenued. *'
4 COPY OP THE FEE-BILL ON WHICH THE DECISION WAS RENDERED.
fflm. Chiles to the Clerk of Montgomery Circuit Court Dr* 1819. d. c.
FeVy*—Copy courses of deed, Simpson to you, 25
Subpœna vs. Botts 18, certificate 25, 43
Subpœna vs. Dedman 18, vs. Gatewood 18, 36
Subpœna vs. Botts 18, vs. Stevens 18, vs. Ward 18, 54
Mar—Copy bond Bridges to Hays, 50
Filing bill 10 1-2, dock. 8, attorney 8, subpmnaél, return 12 1-2,vs. Dunham, &c. 57
Filing and docketing ejectment 26, atto. 8, order survey 37 1-2, copy 18, vs. Boyd, order 25, vs. same, 1 14
Same fees vs. Baker, same, same, 1 14
Same fees vs. Bridges, same, same, 1 14-
*213 Same fees vs. Todd, same, same, 1 14
Motion 18, order 25, entering judgment court of appeals 50, vs. Stevens, 93
Order of continuance vs. Smith 25, continuance vs. same, 50
Motion 18, filing affidavit 10 1-2, order 25, copy 18, vs. Stevens, 71 1-2
Altorney 8, filing answer 10 1-2, order 25, ads. Bridges, 43 1-2 Swearing jury vs. Botts, 75
Order vs. same 25; judgment 18, taxing costs 18, filing papers 18, 79
Order awarding writ of possession, 25
Order 25, judgment 18, taxing costs 18, vs. Dedman, 61
Order of continuance vs. Stevens 25, continuance vs. same 25, 50
Swearing jury vs. Ward 75, motion 18, order 25, 1 18
Order of continuance vs. Gatewood 25, continuance vs. same, 50
Same fees vs. Stevens, same, 50
Samr fees vs. Mosley, same, 50
2 orders witnesses’ attendance 36, oaths 36, copies 30, vs. Botts, 1 02
Record on final judgment vs.Bótts, 2
Filing and docketing ejectment 25, attorney 8, order 25, order survey 37 1-2, copy 18, vs. M’Clain, 1 14
2 orders witnesses’ attendance 36, oaths 36, copies 30, vs. Farrow, 1 02
Same fees vs. Stephens, same, 1 02
Order witness’attendance 18, oath 18, copy 15, vs. Ward, 51
Same fees vs. Gatewood, same, 51
Executions vs. Ward, 06
Certifying power of attorney, Tolin to you, 25
May — Copy judgment, &c. Chiles vs. Conley’s heirs, and certificate, 7 5
Copy writ of possession, &c. in record Chiles vs. Stephens, 50
June-2. subpoenas and certificate vs. Ded-man 61, subpœna vs. Stephens, &c. 18, 79
Subpœna vs. Stephens 18, vs. Gatewood 18, vs. Boyd 18, 54
*214 Subpœna vs. Bridges 18, copy deed Davis to Young and certificate, 1 18
Copy deed Davis to Jamison and certificate, 1
Copy deed Davis to Clement and certificate, 1
Copy deed Davis to Ringo and certificate, 1
Copy power of attorney Davis to Twyman and certificate, , 75
July — Copy account vs. Haums, Szc. 12 1-2, subpoena vs. Boyd 18, 30 1-2
Order vs. Stevens, &c. 25, judgment 18, taxing costs 18, 61
Order continuance vs. Smith 25, continuance vs. same 25, 50
Order to record exceptions 25, record 50, vs. Stevens, 75
Order vs. Botts 25, judgment 18, taxing costs 18, 61
Order continuance vs. Dedman 25, continuance vs. same 25 50
Order vs. same 25, judgment 18, taxing costs 18, on continuance, 61
Joinder on demurrer 10 1-2, order 25, vs. Stevens, (trespass,) 35 1 — 2
Order removing cause to Clarke vs Ward, 25
Order vs. same 25, judgment 18, taxing costs 18, 61
Motion 18, order leave to withdraw letter vs. Ward 25, 43
Motion 18, order 25, subpœna duces tecum 18, return 12 1-2, ads. Botts, 73 1-2
Attorney 8, motion 18, order to record opinion court of appeals 25, recording opinion 150, order 25, vs. Patterson, order 25, judgment 18, order 25, taxing costs 18, filing papers 18, vs. same, 2 87
Order 25, judgment 18, order 25, taxing costs 18, filing papers 18, vs. Farrow, 1 04
Order continuance vs. same 25, continuance vs. Boyd 25, 50
Continuance vs. Bridges 25, vs. Smith 25, vs. Clark 25, 75
Joinder in plea 10 1-2, order 25, continuance 25, vs. Patton, 60 1-2
Attorney 8, plea 10 1-2, order 25, ads. Bridges, 43 1 — 2
*215 Order vs. Patterson 25, judgment 18, taxing costs 18, 61
Order 25, ads. Botts’ heirs, 25
2 orders witnesses’ attendance 36, vs. Stevens, oaths 36, copy 30, 1 02
Order witness’ attendance 18, costs 15, oath 18, vs. Bridges, 51
Same fees vs. Haggard, same, same, 51
Same fees vs. Stevens, same, same, 51
Sept — Two subpoenas and one certificate vs. Bridges 61, subpœna vs. Haggard 18, 79
Subpœna vs. Stevens 18, vs. Gatewood 18, 36
Copy James Bradshaw’s deposition, 1
Copy H. F. P. Mosley vs. Turley, 50
Oct — Motion 18, order 25, subpœna duces tecum 21, return 12 1-2, vs. Dedman, 76 1-2
Subpœna vs. Dedman 18, swearing jury vs. same 75, 93
Order to discharge jury until to-morrow vs. same, 25
Order for change of venue of cause vs. Haggard, 25
Same fee vs. Steven, same, same, 25
Order continuance vs. Haggard 25, continuance vs. same, 50
Same fees vs. Stevens, same, same, 50
Filing grounds for new trial 10 1-2, order 25, vs. Dedman, order vs. Botts’ heirs, 35 1-2 25
Order witness’ attendance vs. Dedman 18, oath 18, copy 15, 51
Same fees vs. Stevens, &c. same, same, 51
4 orders witnesses’ attendance 72, oaths 72, copies 60, vs. Bridges, 2 04
Continuance vs. Bridges 25, vs. Boyd 25, vs. M’Clain 25, 75
Continuance vs. Clark, 25
Filing and docketing an ejectment 26, attorney 8, order 25, O. S. 37 1-2, co. 18, co. 18, vs Dedman, 1 32
Swearing jury vs. Patton, 75
Order vs. same 25, judgment 18, taxing costs 18, papers 18,
Record complete on final judgment vs. same, Order writ possession 25, writ 50 75
*216 Attorney 8, filing exception 10 1-2, order 25, motion 18, order 25, appeal bond 33, vs. Dedman, 1 19 1-2
2 executions vs. Ward 66, vs. Farrow 33, 99
Execution vs. Patterson 33, vs. Patton 33, vs. Farrow 33,
E. E. $67 43 M. HARRISON, Clerk. O