## STATE *vs.* ALMON READ.

Public Laws of R. I. cap. 629, March 30, 1877, which, subject to certain exceptions, prohibits the sale of any merchandise within one mile of the place where a religious society is holding an out-door meeting, unless the society consents to the sale, is a police regulation, and as such is constitutional.

CONSTITUTIONAL questions certified to the Supreme Court under Gen. Stat. R. I. cap. 209, §§ 1–9.

*Dexter B. Potter*, for defendant, contended.

The act, Pub. Laws R. I. cap. 629, March 30, 1877, to be declared constitutional, must be upheld either under the doctrine of eminent domain or as a police regulation. There is no pretence that it is a taking of private property for public use, and if there was such a claim no one can pretend that any just compensation has been provided either in the act or otherwise. To come under the power of the State, as a police regulation, the thing to be prohibited must not only be for the general and equal protection of all the people, but it must be of something that, *per se*, is a *wrong* or an *evil*. This, of course, is under the principle of repression, not of a regulation as in the case of a *quasi* dedication of property to the use of the public.

This act was evidently intended to create a monopoly, in the sale of food, in favor of this society during the time of holding their meetings. The fact that they sell is notorious, and this complaint shows an attempt to prevent sales by others. The provisions of the act, against selling spirituous or intoxicating liquors and kindred subjects, were introduced merely as make weights to carry the bill through the legislature. This appears indisputably from the fact, among others, that all of these offences were before prohibited by law and the penalties were severer than those provided in this act. It would hardly be claimed either that this society could license, or give " consent " to the sale of " spirituous or intoxicating liquors." To sell food then within one mile of a religious society, at certain times, is made a crime unless the person procures the " consent " of the society " or of its proper officers."

The defendant in this case hired land of one Philip Havens and took out a victualler's license, but this law prevents the use of the land by him. The owner of the fee, himself, is prohibited as well. This in effect is a taking of private property for private use and that even without an attempted compensation. This is unconstitutional and the *quantum* of the interest is immaterial. *Commonwealth* v. *Bacon*, 13 Ky. 210; Cooley Constit. Limit. *531; *Hepburn's case*, 3 Bland, 95–98; *Bangor R. R.* v. *Mc Comb*, 60 Me. 290, 295; *Pumpelly* v. *Green Bay Co.* 13 Wall. 166; *Glover* v. *Powell et al.* 10 N. J. Eq. 211, 229.

The case of *Commonwealth* v. *Bacon* is " on all fours " with the

case at bar, except that one was an agricultural society and the other a religious. No one, however, would seriously urge that private property could be taken to found a church, and as the *quantum* of interest taken, as we have seen, is immaterial, it follows that this act cannot be sustained. In the case of *Hay* v. *Cohoes Co.* 3 Barb. S. C. 42, 47, the court refers to the matter of the taking of property for church purposes as something not to be imagined. It has been reserved, nevertheless, to a Rhode Island legislature to grant a religious society a monopoly of the sale of food. To uphold the act as a police regulation, is to establish that the sale of a few harmless oysters, within a mile of a camp meeting, is a disturbance thereof, and that the sale of a few crackers is a nuisance *per se.*

*Pardon E. Tillinghast,* for plaintiff.

*Providence, July* 19, 1879. DURFEE, C. J. The question submitted to us in this proceeding is whether Pub. Laws R. I. cap. 629, of March 30, 1877, is constitutional. The act is as follows, to wit:

" AN ACT FOR THE FURTHER PROTECTION OF THE MEETINGS OF RELIGIOUS SOCIETIES.

" *It is enacted by the General Assembly as follows:*

" SECTION 1. Whenever any religious society shall hold any camp, tent, grove, or other out-door meeting, for any purpose connected with the object for which such religious society was organized, no person, without the consent of such religious society or of its proper officers, shall keep in any shop, tent, booth, wagon or carriage, or other place for sale, or expose for sale any spirituous or intoxicating liquors, or other drinks, or food, or merchandise of any kind, or hawk or peddle any such liquors, or merchandise within one mile of the place of such meeting; nor shall any person engage in gaming, horse-racing, or exhibit or offer to exhibit any show or play within the like distance of one mile of such meeting; and any person violating any provision of this act shall be fined not exceeding twenty dollars or less than five dollars, or be imprisoned not exceeding thirty days. *Provided, however,* that nothing herein contained shall be construed to prevent innkeepers, grocers, or other per-

sons from pursuing their ordinary business at their usual place of doing business, nor to prevent any person from selling victuals in his usual place of abode."

The defendant was convicted on a complaint charging him with keeping and exposing for sale certain drinks, food, and merchandise in violation of the chapter. He objected in the course of the trial that the chapter is unconstitutional. The question of its constitutionality is certified for decision under Gen. Stat. R. I. cap. 209.

The defendant contends that the chapter is unconstitutional because it takes private property for private use, and that too without compensation. He refers to *Commonwealth* v. *Bacon*, 13 Ky. 210. In that case an amendment of the charter of the Bourbon County Agricultural Society, making it unlawful for any person, without the consent of the directors of the society, to open a stable or place within three hundred yards of the society grounds, for the purpose of receiving horses or vehicles for pay, during the continuance of the society's fairs, was held to be unconstitutional, because it restricted the right of other persons to use their property in a particular manner, so that the society might have an opportunity to use its property in that manner to greater profit. The design of the statute was to create a monopoly in favor of the society.

The case is in point if cap. 629 was enacted for such a purpose. We see no reason to suppose that it was enacted for any such purpose. It does not restrict the right of any person to carry on his ordinary business at his usual place of business. It also permits any person to sell victuals in his usual place of abode. It is not enacted for the benefit of any particular religious society, but it extends to every such society when holding a camp meeting. The chapter is ostensibly designed for a police regulation. We see no reason for supposing that its ostensible is other than its real design. To allow pedlers, hawkers, and hucksters of every sort to frequent the vicinity of camp meetings for the sale of their wares, without any restriction, would inevitably tend to disorder, intemperance, and immorality. It is urged that a mere selling of food, or of other innocent or necessary articles, can do no harm. This would be true if selling those articles were not used as a cover for the sale of intoxicating

liquors, or of other injurious or immoral things. The restriction is general, because if not general it would be unavailing. It is imposed not only for the protection of the societies which hold the meetings, but also for the good of all who attend them. In other words it is a police regulation.

The chapter, so considered, is clearly constitutional. It restrains the individual in the use of his property for the public good. Nothing is more common than the imposition of such restraints. Our Sunday laws are illustrations of it. So are statutes which prohibit the storage of gunpowder, or the keeping of swine, or the erection of wooden houses of more than a limited height, in the compact part of cities, or the sale of milk which has been watered. And so is our statute requiring certain shows or exhibitions to be licensed. These statutes restrict the uses of property; but they are valid, nevertheless, because they are passed to promote the public welfare. Cooley Constit. Limit. *572–596. And it is no objection to them that they are local in their application, so long as they are designed to subserve a public purpose within the locality. Cooley Constit. Limit. *390.

The decision of the court is that cap. 629 is not unconstitutional, and that the defendant, if duly convicted, is liable to punishment for the violation of it.