JACKSON *ex dem.* WOOD *et al. against* WOOD.

EJECTMENT, for part of lot No. 72, in Cincinnatus, tried before Judge WALWORTH, at the Cortland Circuit, in June, 1824. The plaintiff sought to recover on a mortgage of the premises, given by the defendant to the lessors of the plaintiff.

The defendant called Samuel Curry to prove the mortgage paid. The witness was objected to, as incompetent, on the ground that he had been convicted of petit larceny.

It appeared from the record of the trial, before three Justices of Cortland county, that on the 14th of August, 1809, Curry was arrested on a charge of stealing a bag of wheat, and being brought before the magistrate who issued the warrant, he refused to give bail for his appearance at the next general sessions, and would not consent to a trial before a Court of special sessions, without a jury. The justice committed him to the custody of the constable, and at the expiration of 48 hours, the prisoner still refusing to give bail, a Court of special sessions was organized, agreeably to the provisions of the act of the 24th March, 1801, which proceeded to the trial and conviction of the prisoner.

The defendant's counsel insisted, that the trial and conviction of Curry, against his consent, and without indictment or jury, was unconstitutional and void, and that he was still a competent witness.

WALWORTH, Circuit Judge. It is objected, that the trial of Curry by the special sessions, without jury or indictment, was a violation of the constitution of this state, and also of that of the United States.

The former constitution of this state was in force at the time of this conviction, and the only part which had any bearing upon the question, was the 41st article. That part of the constitution provided, that trial by jury, in all cases in which it had before been used in the colony of New York, should remain inviolate forever, and that the legislature should, at no time thereafter, institute any new Courts but such as should proceed according to the course of the common law. If the act of 1801, authorizing a trial by special sessions, without indictment or jury, in cases of petit larceny and other small offences, had been the first law instituting such Courts and authorizing such trials, it would have been a palpable violation of this article of the constitution.

But this act was only a revision of a former law, which was in force at the adoption of the constitution, in 1777, and as it respected these Courts and the offences of which they had cognizance, contained no new provisions. The first act instituting such Courts, and containing substantially the same provisions, was passed by the colonial legislature in 1744. It was amended in 1768, and was re-enacted in the revisions of the laws in 1788, 1801 and 1813; and it is recognized and provided for by the 7th article of the new constitution of this state. No right of trial by jury ever existed in those Courts until it was authorized by the act of the last session. The legislature, therefore, did not establish any new Court, and the right of trial

by jury remained as it had been used in the colony of New York previous to the adoption of the constitution.

The validity of the act of 1801, in reference to the constitution of the United States, depends upon the 5th and 6th articles of the amendments to that instrument. By the 5th article, " no person shall be held to answer for a capital, or otherwise infamous crime, unless on indictment or present-ment of a grand jury ;" and the 6th gives to the accused the right of trial by jury, in all criminal prosecutions. If either of these amendments are res-trictive upon the powers of the states, or applicable to criminal prosecutions under the state laws, the trial of Curry was a violation of the constitution, because he was tried for an infamous crime, without indictment or present-ment, and was deprived of the benefit of a jury trial. But, from the inves-tigation I have given this subject, I have come to the conclusion, that none of these amendments are applicable to the individual states ; that they are restrictive upon the powers of the general government only, and applicable to the proceedings under the authority or laws of the United States.

The terms of these amendments are broad enough to embrace criminal proceedings in all Courts, and there is nothing in the 5th and 6th amend-ments, taken by themselves, to show whether they were intended to be thus extensive in their operation, or only applicable to the federal government It, therefore, becomes necessary, in order to ascertain the true construction, to refer to the causes which produced the amendments, to the time and man-ner of their adoption, and other attendant circumstances.

It was a well known fact, that a very considerable portion of the people of the United States, among whom were some of our most distinguished citizens, strenuously opposed the adoption of the federal constitution, on the ground that the powers of the general government were not sufficient-ly limited. They insisted that the authority of the state governments was too much weakened, and that there was danger of their being finally swallowed up in a consolidated government. Several states, and among others the state of New York, for a long time refused to accept the con-stitution which had been recommended by the convention of the states ; and when the state conventions finally ratified it, they recommended amendments and modifications, mostly restricting the powers of the United States. The convention of this state, in their act of ratification, declared, among other things, that an indictment ought to be presented by a grand jury, as a necessary preliminary to the trial of all crimes cognizable by the Judiciary of the United States, and that such trial should be by an im-partial jury of the county where the crime was committed. In consequence of these recommendations, Mr. Madison, at the first session of congress, brought forward, in the house of representatives, a proposition to amend the constitution ; and that body finally adopted 17 amendments, which were sent to the senate for its concurrence. The 14th of these amend-ments provided, that *no state should infringe the right of trial by jury, in criminal cases, nor the right of conscience, nor the freedom of speech or of the press.* The senate expunged this amendment, which was the only one restricting the powers of the states, and consolidated and adop'ed

the substance of all the others, with a few trifling exceptions. They also amended the preamble, by reciting, as the reason of their proposing the amendments to the states for adoption, that the conventions of a number of the states, had at the time of their adopting the constitution, expressed a desire, in order to prevent misconstruction or abuse of its powers, that further declaratory and restrictive clauses should be added. Ten of the amendments thus agreed to by congress were afterwards sanctioned by the requisite number of states, and thus became a part of the constitution.

Many of the states have given a practical construction to these amendments, by the various provisions which they have incorporated into their state constitutions, which have been formed or amended since these amendments were adopted. By the constitution of Connecticut, indictment by a grand jury is required only in cases where the punishment is death or.perpetual imprisonment. In Mississippi no indictment is required in the case of slaves, and they are entitled to a trial by jury in capital cases only. The first amendment proposed by the late convention in Massachusetts, required indictment only in cases where the punishment was to be infamous. By the constitution of New Hampshire, adopted in 1792, the legislature are prohibited from depriving the accused of the right of trial by jury, in capital cases ; and in most of the other state constitutions, which have been formed or altered since that period, there will be found exceptions to the right of trial by jury, and other provisions, which are wholly inconsistent with the idea that these amendments to the constitution of the United States restrict the powers of the state governments.*

I am, therefore, clearly of opinion, that these amendments were never intended to limit the powers of the states, or to control the proceedings of state Courts ; and that Curry was legally and constitutionally convicted of an infamous crime, which disqualifies him from being a witness.

*Noxon & Birdseye*, for the plaintiff.

*Donelly & Clapp*, for the defendant.

* For some of the facts on which this opinion is founded, vid. Old Const. of New York, art. 41 ; New Const. art. 7, s. 2 ; Const. of the U. States, am. to art. 5 ; Journals of the Senate, 1789, ps. 63, 72, 73 & 96 ; Journals of the Federal Convention, 402, 3, 10, 13, 14, 19, 28, 39, 41, 55, 66. Const. of Conn. art. I. s. 9 ; Const. of Miss. art. 6, tit. Slaves, s. 2 ; Const. of N· Hamp. part I. art. 16 ; Const. of Maine, art. 1, s. 7 ; Const. of Alabama, art. 6, tit. Slaves, s. 1.

For a history of the Court of Special Session in this state, vid. 1 Cowen's Rep. 151, note (e).

Vid. *The People* v. *Goodwin*, (18 John. Rep. 187,) where the question was discussed by Messrs. *Hoffman & T. A. Emmet*, for the defendant, and

NEW YORK,
May, 1824.

———————

Murphy
v.
The People.

*Griffin & Wells* for the people, whether the provision in the 5th amendment of the United States constitution, "nor shall any person be subject, for the same offence, to be twice put in jeopardy of life or limb," is applicable to the state Courts.   Spencer, Ch. J. intimates that it is, though the question was not finally determined.