## GOVAN VS. JACKSON.

1. CONTESTED ELECTION: *Jurisdiction.*

Under the provisions of sec. 52, art. vii, of the Constitution, the power of the the legislature to establish a special tribunal or board for the determination of contested elections is unquestionable.

2. TRIAL BY JURY: *Contested election, summary proceedings, etc.*

It is only in cases at common law and other analogous cases, that the right of trial by jury is guaranteed by the Constitution. It is competent for the legislature to dispense with a jury trial in the case of a contested election; and a provision for the trial of such cases in a *summary way* has that effect.

3. ELECTION: *Return of ballots and poll-books to County Clerk; contest.*

The law requires the judges of election to return one of the poll-books, under seal, to the County Clerk; also all the ballots cast at the election securely enveloped and under seal, and provides that the ballots shall not be opened except in case of a contested election; in this case both the poll books and the ballots, the latter not numbered and loose, were locked up in the ballot box and sent to the County Clerk: Held, *First*—The clerk had no right to return the ballot-box to the judges of election to enable them to correct their return. *Second*—Upon a contest in regard to the election, the votes so returned should be counted. The Constitution requires all legal votes cast at an election, no matter whether returned or not, or whether any irregularities attended the election, to be counted upon a contest.

4. CONTESTED ELECTION: *trial of, issues.*

The real inquiry upon a contest is whether the contestant or the respondent received the highest number of legal votes, and it is not confined to the ground specified in the notice of contest. The respondent may without any cross contest, which is not contemplated by the statute, call in question the validity of the votes cast for the contestant, either in the township specified in the notice, or any other township in the county.

APPEAL from *Lee* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*Tappan & Hornor,* and *Hughes,* for appellant.

*Howes, contra.*

HARRISON, J.:

F. H. Govan and J. M. Jackson were opposing candidates at the general election on the first Monday in September, 1876, for the office of Circuit Clerk of Lee County.

Govan received the certificate of election and, in accordance therewith, the commission from the Governor.

Jackson gave Govan notice that he would contest the election before the County Court at the next or October Term, 1876, upon the ground that the votes cast in Hardy township, in which he received sixty-four and Govan eighteen votes, were not counted upon the examination and canvass of the returns, which, if counted, would have given him in the county 1127, the highest number of votes cast for the office, Govan 1089, and that he was elected by a majority of thirty-eight votes.

To the contestation Govan filed a response, and to the response Jackson filed a demurrer. The court overruled the demurrer, and Jackson electing to rest thereon, his contest was dismissed, and he appealed to the Circuit Court.

In the Circuit Court he again demurred to the response, and his demurrer was there sustained.

Govan, upon leave granted, filed an amended response consisting of four paragraphs.

The first denied that any return was made to the County Clerk from Hardy township.

The second averred that the ballots in said township were not numbered, and, therefore, void.

The third denied that the contestant received 1127 legal votes, or a majority of the legal votes, but averred that the respondent received 1089 legal votes, which was the highest number of legal votes cast, and especially charged that certain persons named, not qualified electors, who had not resided in the township

thirty days, in the county six months, nor in the State one year, voted for the contestant in the following townships:

| | |
|---|---|
| In Hardy | 42 |
| In St. Francis | 38 |
| In Dennis | 6 |
| In Texas | 3 |
| In Union | 2 |

and that the contestant, who did not reside therein, voted for himself in Independence township.

And the fourth averred that in St. Francis township the ballot box, after the poles were closed, was opened and the ballots taken out and the votes counted in the absence of the judges and one of the clerks; and that the said judges made their certificate and return, the day after the election, without any examination and verification of the ballots, and solely upon the information of the persons who had so illegally opened the ballot-box and counted the votes; and that the polls were not signed by the judges and attested by the clerks, nor the names counted and the numbers set down at the foot of the poll books, and also that one of the judges was not a resident of the township.

The contestant demurred to the last three paragraphs as containing no answer to his ground of contest, but as setting up a cross-contest, without notice to him, and the court sustained the demurrer and ordered said paragraphs stricken out.

The respondent asked for a jury, which the court refused to allow to be called, and proceeded to hear and determine the case without one; and it found that the contestant was elected, and not the respondent, and entitled to the office.

The respondent moved for a new trial, which was refused ; and an order annuling his election, and declaring the election of the contestant, was thereupon entered.

The defendant appealed to this court.

The motion for a new trial was upon these grounds : *First*—
That the court should have allowed the trial to be by jury as re-
quested by the respondent.   *Second*—That the court erred in its
declaration of law ; and, *Third*—That the finding was against the
law and evidence.

The Constitution, sec. 24, art. xix, makes it the duty of the
General Assembly to provide by law the mode of contesting elec-
tions in cases not therein specially provided for, and, in compli-
ance with that requirement, such provision is made in the general
election law of 1875.

It is the evident intention of the act that such contests shall,
as the public interests demand, be speedily and summarily de-
termined.

Sec. 71 of the act is as follows : " When the election of any
clerk of the Circuit Court, sheriff, coroner, county surveyor,
county treasurer, county assessor, justice of the peace, constable,
or any other county or township officer, the contest of which is
not otherwise provided for, shall be contested, it shall be before
the County Court, and the person contesting any such election
shall give to the opposite party notice in writing ten days before
the term of the court at which such election shall be contested,
specifying the grounds on which he intends to rely, and if ob-
jections be made to the qualifications of voters, the names of
such voters, with the objection, shall be stated in the notice, and
the parties shall be allowed process for witnesses."

Sec. 72 says : " Either party may, on giving notice thereof to
the other, take depositions to be read in evidence on the trial,
and the court shall, at the first term (if fifteen days have elapsed
after such election, and if less than fifteen, then at the second
term), in a *summary way* determine the same according to
evidence."

Govan vs. Jackson.

There is nothing in the Constitution, that we can see, which requires that the contest should be made before the County Court or that restrains the legislature from erecting some other tribunul or board for its determination; on the contrary, the power of the legislature to establish such, if not distinctly expressed, is plainly implied in sec. 52 of art. vii., which is as follows : "Sec. 52. That in all cases of contest for any county, township or municpal office, an appeal shall lie at the instance of the party aggrieved, from any *inferior board,* council or tribunal to the Circuit Court, on the same terms and conditions on which appeals may be granted to the Circuit Court in other cases, and on such appeals the case shall be tried *de novo.*"

The law has made no provision for juries in the County Court, and we can see no greater expediency for a trial by jury in the Circuit Court when the case is carried there by appeal, than in the first instance in the County Court, or why it should not be determined in as summary manner in the former as in the latter.

The requirement that it shall be determined in a summary way, is that it shall be tried without a jury. Mr. Bouvier defines a summary proceeding to be " a form of trial in which the ancient established course of a legal proceeding is disregarded, especially in the matter of trial by jury, and in the case of the heavier crimes, presentment by a grand jury." Bouv. L. Dict.

But it is contended by the appellant that trial by jury is a right guaranteed by the Constitution, and that it was not within the power of the legislature to deprive him of it.

It seems well settled by the authorities that it is only in cases at common law, and perhaps such as are of similar or analogous nature that the guarantee relied upon by the appellant applies, and that statutory proceedings and rights which did not exist at common law, are not within it. *Boring* v. *Williams,* 17 Ala., 510 : *Tims* v. *The State,* 26 Ala., 165; *Creighton* v. *Johnson,* 6

Litt., 241; *Watts* v. *Griffin,* Ib., 244; *Harrison* v. *Chiles,* 3 Litt., 200; *Harris* v. *Wood,* 6 Monroe, 642; *Murphy* v. *The People,* 2 Cow., 819; *Wynehamer* v. *The People,* 3 Kernan, 378; *Mountfort* v. *Hall,* 1 Mass., 443; *Wells* v. *Caldwell,* 1 A. K. Marsh 328; *Inhabitants of Shirley* v. *Lunenburgh,* 11 Mass., 379; *In re Powers,* 25 Vermont, 261; *Emerick* v. *Harris,* 1 Binn., 416; *Van Swurtow* v. *The Commonwealth,* 24 Penn. St., 131; *Ewing* v. *Filley et al.,* 43 Penn. St. 384; Kneass's case, Lead. Cases on Elections, 360.

Mr. Sedgwick says: "It is also to be understood that when the Constitution guarantees the right of trial by jury it does not mean to secure the right in all possible instances, but only in those cases in which it existed when our Constitutions were framed. Sedgw. Stat. and Con. Law, 496. ·

In the case of *Ewing* v. *Filley et al.,* cited above, which was a case of contested election, the Supreme Court of Pennsylvania says: "It is not in the act of organization of the State, nor in the perpetuation of its organic succession, but in the administration of rights under the organization, that the Constitution secures the right of trial by jury. The jury is the popular element in the determination of rights which need enforcement by means of the State organization; but there is a much larger popular element in our elections; the votes of all the people and all our political practice shows that we have not considered a jury an essential means of deciding contested elections of public officers."

The returns before the court, including that from Hardy Township, showed that the contestant's entire vote in the county was 1127, and the respondent's 1089.

It was proven that both poll-books of the election in Hardy Township, upon one of which the judges had made their returns, were, together with the ballots, the latter not numbered and also

Govan vs. Jackson.

loose, placed by the judges in the ballot box, which was then locked and a piece of paper pasted over the orifice through which the ballots were deposited, across which the names of the judges were written, and another piece pasted over the key-hole, across which also the name of a deputy sheriff was written, and the box was placed in the hands of one deputy sheriff and the key in those of another, to be carried and delivered to the County Clerk who was the respondent, which was done on the day after the election, and he deposited the same in his office.    At the time the box was delivered to the clerk, he was told that the ballots were loose and unenveloped in it.

On the next day, the third day after the election, the judges learning that they had not made their return according to law, applied to the respondent for the ballot box, that they might get out the poll-books and make a proper return.    The respondent declined to let them have the box, or to allow it to be opened, and on the fourth day after the election he despatched a messenger to bring up the poll-book and returns as required by the statute, which for the reason shown, could not be done ; and the votes of said township were not entered in the abstracts made by the clerk and the two justices upon the examination and canvass of the returns.

The court declares as a proposition of law, that the votes in each township returned to the clerk, should have been stated in the abstracts of the returns made by him and the two justices, and that the votes in Hardy Township should have been stated therein.

The court seems to have assumed, that the judges of election in Hardy Township did make a return, but in this we think it was mistaken.    The poll book and return, were, in fact, delivered to the clerk, but in such a manner as defeated the end intended by the statute.    Sec. 41 of the act says:    "After canvassing the

votes as aforesaid, the judges before they disperse, shall put under cover one of the poll books, seal the same and direct it to the clerk of the County Court of their respective counties;" and sec. 45 reads as follows: "It shall be the duty of the judges of the elections in the respective townships throughout the State, after such election shall have been closed, as provided for in the foregoing section, securely to envelope all ballots which may have been received in accordance with the provisions of this act, under seal, and return the same to the clerk of the proper county, which shall in no event be opened, except in case of contested election. Now in this case, the poll book with the return upon it, was locked up in the ballot box, with the ballots unenveloped and loose therein. To have opened the box was to have broken the seals, or what was intended by the judges for such, and to open the ballots, in direct violation of the law. The application of the judges to the clerk for the box, was no doubt made in good faith; but it had then passed from their charge to his, and it was his duty to preserve it as containing the ballots, and in the same state in which he received it, and he had no such discretion as to permit it to be opened by any person, or for any purpose, except in case of contest.

But the declaration was inapplicable to the case before the court. The question it was considering was: Should the votes then be counted? Not, ought they to have been counted upon the examination and canvass of the returns? Sec. 11 of art. iv., of the Constitution, is as follows:

Sec. 11. "If the officers of any election shall unlawfully refuse or fail to receive, count or return the vote or ballot of any qualified election, such vote or ballot shall, nevertheless, be counted upon the trial of any contest arising out of said election." And it is apparent that the duty to count them, did not depend ·

upon the obligation to count them upon the canvass of the returns.

This provision of the Constitution requires all legal votes which have been cast or offered, no matter whether returned or not, or what irregularities have attended the election, upon a contest to be counted. The illegal proceedings and irregularities in the townships of Hardy and St. Francis, did not, therefore, have the effect to make void the votes of the qualified electors of those townships, and the court very properly declined to go into any inquiry concerning them, and sustained the demurrer to the second and fourth paragraphs in which they were charged.

The finding of the court in favor of the contestant was in accordance with the evidence before it: but we think the respondent should have been permitted to prove, if he could have done so, that illegal votes were given for the contestant in the townships named and as charged in the third paragraph of his answer.

The real inquiry was as to which, the contestant or respondent, received the highest number of legal votes, and was not confined, as the court in effect held in sustaining the demurrer to the third paragraph, to the ground specified in the contestant's notice of contest, or whether the votes cast in Hardy Township should be counted. Nor was there any cross-contest by the respondent as assumed in the demurrer. The statute does not contemplate any thing of the kind, and in the nature of such a controversy it seems to be inadmissible. The contest puts in question the validity of the election of the person holding the certificate of election and having a *prima facie* title to the office ; and though the contestant may be able to prove the grounds specified in his notice, the person declared elected ought certainly to be admitted to show, if he can, in support of his title to the office from which the contestant seeks to oust him, that the contestant was, notwithstanding, not elected.

36

The judgment of the court below is reversed, and the cause remanded to it, with instructions to grant the appellant a new trial, and to allow him to produce evidence to prove the illegal votes charged or facts set up in the third paragraph of his response.