## STAFFORD v. COOK.

### Opinion delivered June 18, 1923.

1. SCHOOLS AND SCHOOL DISTRICTS—DIRECTORS AS COUNTY OFFICERS. —School directors fall within the designation of county officers, within the meaning of the statute regulating contests.

2. SCHOOLS AND SCHOOL DISTRICTS—VALIDITY OF COUNTY BOARD OF EDUCATION ACT.—Under Const., art. 19, § 24, providing that "the General Assembly shall provide by law for the mode of contesting elections in cases not otherwise specifically provided for in the Constitution itself," and art. 7, § 52, providing for an appeal in such contests from any inferior board, council or tribunal to the circuit court, *held* that Acts 1919, No. 234, § 11, providing

that contests over election of school directors shall be heard by the county board of education, with right of appeal to the circuit court, is valid.

3. SCHOOLS AND SCHOOL DISTRICTS—BALLOTS CONTAINING TOO MANY NAMES.—In a school district election ballots containing the names of five school directors, where only two could be voted for, must be thrown out, as there is no means of ascertaining which of the candidates the voters meant to favor with their ballots.

4. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL DIRECTOR—VACANCY.— The fact that a school director, who was eligible when elected, subsequently failed to pay his poll tax did not create such a vacancy in his office as would confer upon the electors the right to elect his successor.

Appeal from Mississippi Circuit Court, Chickasawba District; *W. W. Bandy*, Judge; reversed.

*T. J. Crowder*, for appellants.

The ballots with five names voted for, there being only two vacancies and two directors to elect, were fraudulent and could not be counted. C. & M. Digest, 3829. 97 Ark. 221, not decisive of this case. The fact that three directors had failed to pay poll-taxes and were ineligible to hold office did not operate to vacate their offices. 90 Ark. 335. It only furnished grounds for their removal. Since there were but two vacancies and the only legal ballots were cast for Stafford and Ledbetter, 28 each, they should have been declared elected.

*Gravette & Rayner*, for appellees.

Three of the directors being disqualified to hold office, not having paid a poll-tax, and there being two other vacancies, the electors properly voted for five directors, and having received the highest number of votes, they were elected. A person not having a receipt for poll-tax paid in proper time is ineligible to vote for or hold office of school director. 97 Ark. 221; § 3, art. 19, Const.; 107 Ark. 272. The failure of the three directors to pay poll-tax was a disqualification authorizing the election of their successors. 145 Ark. 443.

*T. J. Crowder,* in reply.

145 Ark. 443, cited by appellees, has no application here.

McCULLOCH, C. J.   This appeal involves a contest between the parties for the office of school director of a special school district in Mississippi County.

Gosnell Special School District No. 6, the district in which this contest arises, was created by special statute approved February 23, 1920, and the statute provides for a board of directors composed of six members.   The present contest relates to the regular election in May, 1922, to provide for the succession of two of the directors whose terms expired at that time.   There were seven candidates, and, according to the returns, appellants, J. T. Stafford and G. R. Ledbetter, received twenty-eight votes each, and appellees, C. E. Cook and P. H. Raspberry, received thirty-three votes each.   Three other candidates, according to the face of the returns, received more votes than appellants.   The returns were canvassed by the county board of education, and appellees, Cook and Raspberry, entered upon the discharge of their duties.   Appellants instituted a contest before the county board of education, and appealed to the circuit court of Mississippi County from an adverse decision of that board.

It appears from the evidence in the case, that the ballots cast for appellants contained only the names of two candidates, whereas the ballots received by appellees contained the names of five candidates.   It is shown that these ballots were cast upon the theory that there were five vacancies, for the reason, it is claimed, that three of the directors, Lloyd, Vernon and Hale, whose terms had not expired, had become ineligible by reason of having failed to pay their poll-tax.   The proof shows further that these persons were still exercising the duties of the office, and that there had been no abandonment or nonuser.

The trial court submitted to the jury the question concerning the alleged ineligibility of Lloyd, Vernon and Hale, and the jury made a special finding that they had not paid poll-tax for the previous year. The trial court then decided that these directors had rendered themselves ineligible to continue in office by reason of failing to pay poll-tax, and entered a judgment against appellants in their contest for the office. The effect of this decision of the trial court was to hold that, there being three ineligible directors, three vacancies occurred by reason thereof, and that there were three places to be filled on account of these vacancies, in addition to the places to be vacated by the expiration of terms at that time.

During the pendency of the contest in the circuit court there was instituted in the chancery court an action to restrain directors Lloyd, Vernon, Hale, G. R. Ledbetter and C. S. Ledbetter, the old directors, from exercising the functions of the office, and a temporary injunction was issued, but later dissolved, and the chancery case was transferred to the circuit court and consolidated with the election contest. This appeal brings up all of the questions raised in both actions.

The General Assembly of 1919 enacted a statute creating county boards of education. Crawford & Moses' Digest, § 8853 *et seq.* The statute, in effect, substituted the county board of education for the county court in the supervision of the school affairs of the respective counties in which the statute was applicable. We have decided that the Legislature did not exceed its powers in creating the board and conferring those duties upon it. *Mitchell* v. *Directors of School District No. 13,* 153 Ark. 50. Section 11 of that statute provides, in substance, that the returns of all school elections shall be made to the county board, that the board shall canvass the returns and "certify the result to the county court for proper record," and that "all contests pertaining to school elections shall be filed with the county board of

education within fifteen days after such election, and the board shall, as soon as practicable after the contest is made or filed, grant a hearing." There is a further provision for an appeal "to the circuit court in the manner now provided by law for appeals from county courts."

Counsel in the case have not suggested any controversy concerning the question of the power of the Legislature to confer upon an election board as a special tribunal the authority to hear contests for the office of school director, but the question naturally arises, and we proceed to its decision as a preliminary matter in this controversy.

We have decided that the office of school director falls within the designation of county officers within the meaning of our statute regulating contests, and that, prior to the statute now under consideration, such a contest must originate in the county court. *Ferguson* v. *Wolchansky,* 133 Ark. 516. The Constitution itself provides the method of contesting elections for certain offices, and it is specially provided in article 19, § 24, that the Legislature may provide by law for the mode of contesting elections in cases not otherwise specifically provided for in the Constitution itself. It is thus seen that the Constitution itself has conferred upon the lawmakers adequate authority to provide for all election contests, leaving the matter entirely within the will of the Legislature as to where and by what means contests shall be conducted. The only question which arises is whether or not the exercise of this authority by the lawmakers was intended to be limited to the courts established by the Constitution. This very question was decided by the court in the case of *Govan* v. *Jackson,* 32 Ark. 553, where it was said:

"There is nothing in the Constitution, that we can see, which requires that the contest should be made before the county court or that restrains the Legislature from erecting some other tribunal or board for its de-

termination; on the contrary, the power of the Legislature to establish such, if not distinctly expressed, is plainly implied in § 52 of art. 7, which is as follows: '§ 52.   That in all cases of contest for any county, township or municipal office, an appeal shall lie, at the instance of the party aggrieved, from any *inferior board,* council or tribunal to the circuit court, on the same terms and conditions on which appeals may be granted to the circuit court in other cases, and on such appeals the case shall be tried *de novo.*' "

The precise question now before us was not involved in *Govan* v. *Jackson, supra,* but the statement above quoted was an essential part of the reasoning of the court in disposing of the other questions involved, hence it cannot be treated as mere *dictum.* This view of the matter is in accord with the great weight of authority in other States, where it is generally held that election contests are not strictly judicial in the sense that they must be determined by the established courts, and it is generally held that, unless the Constitution forbids, the Legislature may refer such contests for settlement to any court or tribunal of its selection.   9 R. C. L. p. 1158.

We conclude therefore that the statute is valid in this respect, and that the contest was properly instituted before the board of education and carried to the circuit court on appeal.

This brings us to a consideration of the merits of the contest—whether or not the ballots cast for appellees were valid expressions of the will of the voters in favor of their election.

It is undisputed that all of the ballots cast in favor of the election of appellees contained the names of five candidates, and, if it be found that there were not so many offices to be filled at that election, it follows from well-settled principles that those ballots must be thrown out, for the reason that, with more names on the ballot than there were offices to be filled, there is no means of ascertaining which one of the candidates the voters ment to favor with their ballots.

There was no designation on these ballots to indicate which of the candidates were voted for as the successors of the officers whose terms expired at that time, and this would necessarily result in the election of appellants, as the ballots cast in favor of all of the other candidates contained the names of five candidates, the same as those cast in favor of appellees. The theory upon which the voters cast their ballots for five candidates was that there were three vacancies on account of the ineligibility of directors Lloyd, Vernon and Hale, but this conception was entirely erroneous, for there were, in fact, no such vacancies. We must treat it as settled by the finding of the jury, upon conflicting testimony, that Lloyd, Vernon and Hale had not paid polltax for the previous year, and were not qualified electors. *White* v. *Hughes,* 97 Ark. 221. There was no attempt, however, to prove that these men were ineligible at the time they were elected and took office. Conceding, without deciding, that a condition of ineligibility arising after election and taking office would constitute ground for removal, it does not follow that such ineligibility vacates the office *ipso facto;* on the contrary, it seems clear to us that such subsequent ineligibility merely affords ground for removal, and does not vacate the office.

"Vacancy in office" means the absence of an incumbent of the office who has been legally inducted therein. Words and Phrases, vol. 4, p. 1122 (second series); 22 R. C. L. p. 437. If the office has not been filled by a *de jure* incumbent, then the vacancy still exists, but, when the induction into office is legal and the person so inducted is eligible at the time, his continuance in the office prevents a vacancy until he abandons the office or is removed therefrom in the manner provided by law. Mere existence of grounds for removal do not constitute a vacation of an office so as to confer upon the electors the right to elect a successor. Any other view of the matter would constitute an expulsion or removal of the incumbent from actual incumbency of the office without

an opportunity to be heard. This is the principle which governed the case of *School District* v. *Garrison,* 90 Ark. 335, though the application of the principle was somewhat different than in this case.

Counsel for appellees rely on the decision in *Means* v. *Terral,* 145 Ark. 443, as supporting their contention that there were actual vacancies which the electors were authorized to fill. We do not think the principles announced in that case have any application, for there was an actual vacancy in the office, which was temporarily filled by appointment, and, according to our interpretation of the Constitution, the voters were authorized to elect a successor—not because of an actual vacancy, but because the law authorized the election of a successor to the appointee of the Governor.

Our conclusion upon the whole case is that the judgment of the circuit court is erroneous, upon the undisputed evidence, and that appellants are entitled to a judgment in their favor, the case being fully developed from the facts.

The judgment is therefore reversed, and the cause remanded, with directions to the circuit court to enter a judgment in favor of appellants, declaring them to be duly elected and entitled to induction into office.