Ms. Pamela Wilmans Arkansas State Board of Massage Therapy Post Office Box 34163 Little Rock, Arkansas 72203-4163
Dear Ms. Wilmans:
This is in response to your request for an opinion on two questions relating to members of the Arkansas State Board of Massage Therapy (the "Board"). You inquire as to "the legality of a board member continuing to serve on the board when residing out of state" and "whether there is a conflict of interest if a current board member is also owner of a massage therapy school."
Our constitution provides:
 All civil officers for the State at large shall reside within the State, and all district, county and township officers within their respective districts, counties, and townships, and shall keep their offices at such places therein as are now or may hereafter be required by law.
Ark. Const. art. 19, § 4.
It does not appear that the Supreme Court of Arkansas has addressed whether members of state boards and commissions are "civil officers for the State at large" for purposes of the quoted provision, but in several cases the court has held that seats on such boards and commissions are "civil offices" for purposes of Ark. Const. art. 5, § 10, which prohibits members of the General Assembly from being appointed or elected to "any civil office under this State." Starnes v. Sadler, 237 Ark. 325,372 S.W.2d 585 (1963); Smith v. Faubus, 230 Ark. 831, 327 S.W.2d 562 (1959);Fulkerson v. Refunding Bd. of Arkansas, 201 Ark. 957, 147 S.W.2d 980
(1941). Seeing no reason why the similar constitutional phrases should be interpreted differently, I conclude that Ark. Const. art. 19, § 4, generally applies to members of state boards and commissions and therefore that members of the Board must be residents of the State of Arkansas.
The wording of your request leads me to assume that a member of the Board lived in the state when appointed and sworn into office, but later relocated to another place. Although your request does not raise the question of how one's residence is determined for purposes of Ark. Const. art. 19, § 4, it should be noted that the Supreme Court of Arkansas, in cases involving requirements that public officials be residents, has generally interpreted "residence" to be synonymous with "domicile." See, e.g., Chaisse v. Eldred, 252 Ark. 101, 477 S.W.2d 480
(1972); see also Op. Att'y Gen. 92-112 (discussing the concept of domicile and the opinions of the Supreme Court of Arkansas that provide guidance in determining domicile in various fact situations involving public officials). Your request does not indicate whether the Board member has expressed an intention to return to Arkansas or has taken actions that tend to suggest that the member intends to return. It should be kept in mind that, depending upon all the relevant facts, one's physical removal from Arkansas does not necessarily mean that one's domicile (i.e., one's "residence," for purposes of Ark. Const. art. 19, § 4) is no longer in the state. The situs of one's domicile is a question of fact that is beyond the authority or ability of this office to determine.
If a member of the Board is in fact no longer domiciled within the state, it is my opinion that the member thereby becomes ineligible to serve on the Board. It should be noted, however, that a vacancy on the Board may or may not be created, depending upon all the relevant facts and circumstances surrounding the member's change of residence. As stated in Op. Att'y Gen. 95-296, where no statute expressly provides that a vacancy is created upon an incumbent's becoming ineligible to hold an office, the mere existence of the ineligibility does not create a vacancy if the incumbent was eligible to hold the office upon assuming it. SeeStafford v. Cook, 159 Ark. 438, 252 S.W. 597 (1923); see also May v.Edwards, 258 Ark. 871, 529 S.W.2d 647 (1975). In such a case, the incumbent becomes a de facto officer, and a vacancy may be created by the officer's abandonment of the office, although a clear intention to abandon must be shown. City of Berryville v. Binam, 222 Ark. 926,264 S.W.2d 421 (1954) and State v. Green, 206 Ark. 361, 175 S.W.2d 575
(1944); see also Appleby v. Belden Corp., 22 Ark. App. 243,738 S.W.2d 807 (1987). A de facto officer who does not resign or abandon the office may be removed in the manner provided by law.
With respect to your second question, it is my opinion that there is a clear potential for conflicts of interest to arise when a member of the Board is also the owner of a massage therapy school. The Massage Therapy Act, A.C.A. §§ 17-86-101 to -312 (Repl. 1995) (the "Act"), regulates massage therapy schools, and authorizes the Board to promulgate and enforce regulations under the Act and to examine and inspect massage therapy schools. A.C.A. §§ 17-86-301(a)(4) and -203. A Board member who owns a massage therapy school is therefore necessarily both a regulator and the owner of a regulated entity, and it is reasonable to expect that the interests of regulators and regulated entities will conflict, at least from time to time.
The foregoing does not necessarily mean, however, that the potential for conflicts of interest inherent in a massage therapy school owner's service as a Board member precludes that person from serving on the Board at all. The Act, among other things, regulates and provides for the licensing of massage therapists. A.C.A. § 17-86-301(a)(1). It also expressly provides that four members of the Board shall be licensed to practice massage therapy. A.C.A. § 17-86-201(a)(1). In my opinion, these provisions clearly demonstrate that the General Assembly was aware of, and determined not to prohibit, the potential for conflicts of interest that is obvious and inherent in an individual's being both a member of the Board and a person licensed by the Board as a massage therapist.
Although the Act does not require the owner of a massage therapy school to be a licensed massage therapist, it does require each massage therapy school to have on staff a licensed massage therapy instructor. A.C.A. §17-86-102(7). Under the Act, only licensed massage therapists may become licensed massage therapy instructors. A.C.A. § 17-86-102(5).
It is reasonable to assume that the General Assembly foresaw that licensed massage therapists, particularly those that are also licensed massage therapy instructors, would be among the individuals most likely to establish, own, and operate massage therapy schools. The Act's requirement that certain members of the Board be licensed massage therapists leads me to conclude that the owner of a massage therapy school may serve as a member of the Board. The member should, of course, be sensitive to the inherent potential for conflicts of interest and consider recusing with respect to issues addressed by the Board when personal interests are such that the member's motivations might reasonably be called into question. The member must, of course, comply with A.C.A. § 21-8-304, which provides:
 (a) No public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
 (b) No public official or state employee shall accept employment or engage in any public or professional activity while serving as a public official which he might reasonably expect would require or induce him to disclose any information acquired by him by reason of his official position which is declared by law or regulation to be confidential.
 (c) No public official or state employee shall disclose any such information gained by reason of his position, nor shall he otherwise use such information for his personal gain or benefit.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh