The Honorable Jim Luker State Senator P.O. Box 216 Wynne, AR 72396
Dear Senator Luker:
I am writing in response to a request you have submitted on behalf of Cross County Judge Billy Lee for my opinion on various questions relating to the following reported facts:
 The five-member Cross County Residential Housing Facilities Board (hereafter referred to as the board) was created by Cross County Ordinance 78-18, dated December 18, 1979. The original members [were] appointed by the Cross County Judge. This board was charged with managing the program for Cross County.
 These funds originated from the sale of bonds in conjunction with HUD block grants for [a] Cross County low-income housing program. The board purchased a CD at a local bank. Through accumulated interest, it has since increased to $355,000.
 There is currently an effort underway by the leadership of The Endowment Foundation of Cross County and the Endowment Foundation of Arkansas to transfer this $355,00[0] to their foundations['] control and to their bank.
My inquiries reveal that the Endowment Foundation of Cross County is an unincorporated division of the Arkansas Community Foundation, Inc., which is a 501(c)(3) public charity.
The quorum court reportedly established the board pursuant to the authority granted in the Public Facilities Board Act, A.C.A. § 14-137-101et seq. (Repl. 1998 Supp. 2003). You report that the bonds issued to finance the project described in Ordinance No. 78-18 have all been discharged.
Judge Lee has further expressed the following concerns regarding the "legitimacy of the current board":
 There are only two members remaining of the original five and their term expired in January 2000. (Two are deceased and one has moved out of Cross County over two years ago and therefore [is] no longer considered a board member and is ineligible to vote.)
 There are no "Oath of Office" statements for any member on record at [the] county clerk[']s office since 1995.
 Can these two members reinstate themselves and appoint replacements of past members[?]
 As far as can be determined, there are no published by-laws, no minutes of previous or current meetings on file and no oath of office on file for ANY member since 1995.
You have provided me a transcript of a Cross County Quorum Court meeting conducted on September 15, 2003, during which the court by a vote of 9-0, overrode Judge Lee's previous veto of an ordinance purporting to authorize the facilities board to "enter into an agreement" with the Endowment Fund of Cross County. It appears that one of these votes was cast by an individual who no longer resides in the county, notwithstanding the fact that the ordinance creating the board requires that board members be county residents. The ordinance indicates that pursuant to the anticipated "agreement," the board would transfer funds in the amount of $355,000 to the Endowment Fund "stating that the funds shall be used for the provision of decent, safe and sanitary residential housing in Cross County with the understanding that such provision shall be construed broadly to allow not only building of such housing but also improvements thereto and conditions therein."
You have further provided me with a legal opinion letter from the Cross County Attorney concluding that the proposed transfer would be legal in light of the quorum court's enactment of an ordinance that "modifies and expands the purposes for which the housing facilities board may act." The county attorney further opined that the facilities board, if granted such expanded authority, would have the independent authority to approve the transfer without quorum court approval. You have also provided me with a letter from the board's original bond counsel opining that because the bonds have been discharged, "with the approval of the County, the excess funds may be applied, by the County, for any lawful purpose." The bond counsel further opined that "[t]he approval and direction by the county should be expressed in the form of an ordinance."
Finally, I am informed that the approximately $355,000 referenced above comprise the sole assets of the facilities board and that the board is exploring the procedure to be followed in effecting its own dissolution following the proposed transfer to the Endowment Fund of Cross County.
This factual background has prompted Judge Lee to pose the following questions:
 1. Article 3 of Cross County Ordinance 78-18 requires all board members to be residents of Cross County. Mr. Tandy Menefee is still carried as a member. Mr. Menefee moved to El Dorado, Arkansas over two years ago and for all practical purposed [sic] his membership on the board was terminated at that time. Given these facts, is his endorsement of the transfer of $335,000 from the Cross County Residential Housing Facilities Board to the Endowment Fund of Cross County valid?
 2. Ordinance (78-18) also dictated that these funds be used only to provide low-income housing for [the] disadvantaged of Cross County. Is the transfer of these monies to the Arkansas Foundation legal in every respect?
 3. If so, since there is no legitimate board, who has the authority to approve and make such a transfer? If it is not legal, why is the transfer proceeding despite of [sic] these questions?
 4. Since the county foundation has a stated policy of only making loans-grants to organizations, (not Individuals) do their policies and bylaws comply with the original intent and prescribed use for this money?
RESPONSE
With respect to your first question, assuming Mr. Menefee was properly installed as a board member and was not subsequently removed from office, he would continue to serve as a de facto board member even if his moving out of the county might provide grounds to seek his removal. Unless he were removed from his office pursuant to law, thereby creating a vacancy, his actions as a board member would have the same effect as if he were still residing in the county. I am unable to answer your remaining questions, which raise issues of fact that this office is unauthorized to address. However, I can and will set forth certain legal principles that a finder a fact would apply.
Question 1: Article 3 of Cross County Ordinance 78-18 requires all boardmembers to be residents of Cross County. Mr. Tandy Menefee is stillcarried as a member. Mr. Menefee moved to El Dorado, Arkansas over twoyears ago and for all practical purposed [sic] his membership on theboard was terminated at that time. Given these facts, is his endorsementof the transfer of $335,000 from the Cross County Residential HousingFacilities Board to the Endowment Fund of Cross County valid?
Article 3 of Ordinance 78-18 provides in pertinent part: "The members of the Board shall be residents of the County and shall take and file with the County Clerk the oath of office as prescribed by the [Public Facilities Board] Act." However, A.C.A. § 14-137-108(a)(3)(A)(ii), enacted pursuant to Act 782 of 1999, provides that in counties having a population of less than 150,000, as does Cross County, facilities board members "are not required to be residents of the . . . county that has created the public facilities board." Accordingly, the question might appear to be whether the recited provision of Ordinance 78-18 is preempted by state law, meaning that Mr. Menefee's moving out of the county could not in itself serve as a basis to disqualify him from service on the facilities board.
However, your question is not whether grounds exist to disqualify Mr. Menefee from board membership, but rather whether his moving in itself had the effect of rendering null and void his subsequent vote on the proposed transfer. In my opinion, the answer to this question is "no." Assuming, as your question suggests, that Mr. Menefee has not been formally removed from the board either by judicial action as a usurper under A.C.A. § 16-118-105, as amended by Act 1185 of 2003, or by the county judge pursuant to A.C.A. § 14-137-108 for "misfeasance, malfeasance, or willful neglect of duty," he would continue to serve as ade facto board member whose vote on any issue should be accorded the same weight as the votes of resident board members.
The Arkansas Supreme Court has described an officer's de facto status as follows:
 "An officer de facto is one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though having no right in fact. His color of right may come from an election or appointment made by some officer or body having colorable but no actual right to make it; or made in such disregard of legal requirements as to be ineffectual in law; or made to fill the place of an officer illegally removed; or made in favor of a party not having the legal qualifications or it may come from public acquiescence in the officer holding without performing the precedent conditions, or holding over under claim of right after his legal right has been terminated; or possibly from public acquiescence alone when accompanied by such circumstances of official reputations as are calculated to induce people, without inquiry, to submit to or invoke official action on the supposition that the person claiming the office is what he assumes to be."
Faucette Mayor v. Gerlach, 132 Ark. 58, 60, 200 S.W. 279 (1918), quotingCooley on Constitutional Limitations (7th ed. at 897-98) (emphasis added).
As one of my predecessors noted in Ark. Op. Att'y Gen. No. 2001-015:
 The Arkansas Supreme Court and Arkansas Court of Appeals have held many times that the acts of de facto officers are valid and enforceable. See, e.g., Bell v. State, 334 Ark. 285, 973 S.W.2d 806 (1998) (assistant attorney general's participation in prosecution as de facto prosecutor did not render conviction invalid); Chronister v. State, 55 Ark. App. 93, 931 S.W.2d 444 (1996) (city attorney serving as de facto
prosecutor was valid prosecution); Dilday v. State, 300 Ark. 249, 778 S.W.2d 618 (1989)); Appleby v. Belden Corp., 22 Ark. App. 243, 738 S.W.2d 807 (1987) (acts of de facto Workers' Compensation commissioners were valid); Casey v. Self, 236 Ark. 496, 367 S.W.2d 114 (1963) (order of de facto judge was enforceable); Brown v. Anderson, 210 Ark. 970, 198 S.W.2d 188 (1946) (affidavits given by affiants who were sworn in by de facto notary public were valid); Forrest City Gro. Co. v. Catlin, Executor, 193 Ark. 148, 97 S.W.2d 910 (1936) (mortgage acknowledged before de facto notary was valid).
However, as noted above, a de facto public facilities board member can be removed from office in one of two ways. First, following notice and an opportunity to be heard, he can be removed by the county judge for "misfeasance, malfeasance, or willful neglect of duty." A.C.A. §14-137-108. Needless to say, only a finder of fact could determine whether a particular board member had engaged in any such misconduct. Secondly, he could be removed as a usurper in the manner provided in A.C.A. § 16-118-105. See e.g., Looper v. Thrash, 334 Ark. 212,972 S.W.2d 250 (1998); Sitton v. Burnett, 216 Ark. 574, 226 S.W.2d 544
(1950). As the court noted in May v. Edwards, 258 Ark. 871,876, 529 S.W.2d 647
(1975):
 We have said that an office does not ipso facto become vacant when a condition of ineligibility of the incumbent arises after he takes office, if he was eligible when he took office, and the subsequent ineligibility merely affords grounds for removal. Stafford v. Cook, 159 Ark. 438, 252 S.W. 597 [1923].
Accord Looper, 334 Ark. at 220. In my opinion, only if Mr. Menefee were removed from office in one of the ways outlined above, thereby creating a vacancy in the office to be filled pursuant to the provisions of A.C.A. § 14-137-108(a)(5), would his actions as a purported board member be subject to challenge, and only then with respect to any actions he purported to undertake following the creation of the vacancy. Accordingly, although the issue is ultimately one of fact, so long as Mr. Menefee's approval of the proposed transfer occurred before any action to remove him as a usurper, I believe his vote approving the transfer should count.
Question 2: Ordinance (78-18) also dictated that these funds be used onlyto provide low-income housing for [the] disadvantaged of Cross County. Isthe transfer of these monies to the Arkansas Foundation legal in everyrespect?
I regret to say that I am unable to opine on this question, which raises issues of fact that I am neither authorized nor equipped to address.
Among these questions is the issue of precisely what activities the two ordinances authorized the facilities board to undertake. As I noted in Ark. Op. Att'y Gen. No. 2003-063, quoting from Ark. Op. Att'y Gen. No.2002-306:
 "[T]he interpretation of local ordinances is a matter outside the domain of the Attorney General. The interpretation of such ordinances necessarily involves a determination of the intent of the city council [or quorum court], a factor that this office is not well situated to consider and address. It also requires a consideration of other factors of which this office is unaware that could reflect a particular intent on the part of the city council that is not apparent from the face of the ordinance. The awareness of such factors is a matter within the local domain, rather than the domain of this office. An interpretation of the legality of the specific ordinance that is the subject of your questions therefore must ultimately be handled locally, through the interested parties and their counsel, or through a medium that can consider local factual matters, such as a court.
These conclusions apply equally to county ordinances enacted by a quorum court.
As noted above, on September 15, 2003, the Cross County Quorum Court unanimously overrode County Judge Lee's veto of an ordinance purporting to approve the facility board's establishment of "a perpetual endowment that will continually further the purposes set forth in the Act." As further noted above, this ordinance further purports to approve "an agreement" between the board and the Endowment Fund of Cross County "stating that the funds shall be used for the provision of decent, safe and sanitary residential housing in Cross County with the understanding that such provision shall be construed broadly to allow not only building of such housing but also improvements thereto and conditions therein." It is unclear from these provisions whether the board intends to provide some sort of conditional grant to the Endowment Fund or whether it intends to enter into a formal contract with the Endowment Fund to provide the described services. Only local counsel acquainted with all the circumstances might determine precisely what the proposed transfer would entail and assess its legal propriety.
Similar factual questions exist regarding the corpus of the funds the facilities board proposes to transfer to the Endowment Fund of Cross County. Although you represent that the bonds have been fully discharged, I am totally unaware of whether the remaining assets are in any way pledged to a particular purpose, as they well might be if their source was the HUD grants referenced in your factual recitation or if the proposed disposition would somehow impair existing contract rights.
I will further note that, as a matter of law, it is unclear to what purposes the remaining assets of a facilities board might be put should the board be dissolved, which I am informed the county intends to do in conjunction with the proposed transfer. As discussed in the attached Ark. Op. Att'y Gen. No. 99-227, the Public Facilities Board Act is simply silent regarding the question of how a facilities board might be abolished and how its remaining assets might be distributed. As noted in my predecessor's opinion, it may be that the quorum court, having enacted the ordinance creating the board, has a parallel authority to enact an ordinance abolishing the board. However, as further noted in that opinion, given the statutory independence between facilities boards and the counties that created them, see A.C.A. § 14-137-104(c); Sanders v.Bradley County Human Services Public Facilities Board, 330 Ark. 675,681, 956 S.W.2d 187 (1997), it is unclear how the assets of a facilities board might be dispensed upon its dissolution. As my predecessor observed:
 It may well be that having abolished the board, the county quorum court is authorized to direct the disposition of assets and liabilities pursuant to its "local legislative authority." Ark. Const. amend. 55, § 1(a). See also A.C.A. §§ 14-14-801 and -802. Again, however, all of the particular facts and circumstances would have to be reviewed to determine the exact parameters of the quorum court's authority. This matter is therefore appropriately referred to the board's local counsel, as well perhaps as bond counsel depending upon the surrounding facts.
Even assuming the quorum court had the authority to dispose of the dissolved facilities board's assets, it is further questionable that it could simply transfer those assets to a public charity or a private nonprofit corporation. In this regard, I am enclosing Ark. Op. Att'y Gen. No. 1999-408, in which one of my predecessors discussed at length what dispositions of public funds local authorities might make without offending the Arkansas Constitution. Only local counsel can determine the precise status of the Endowment Foundation of Cross County and apply the principles set forth in my predecessor's opinion to determine whether the proposed transfer is constitutionally permissible.
Finally, I should note that I am unable to determine whether the proposed transfer might be subject to challenge based on some impropriety involving the composition of the facilities board. Only local counsel familiar with all of the facts will be situated to apply the principles of law discussed above, including the principle of de facto
officeholding.
Question 3: If so, since there is no legitimate board, who has theauthority to approve and make such a transfer? If it is not legal, why isthe transfer proceeding despite of [sic] these questions?
I must initially question your suggestion that "there is no legitimate board." Not being a finder of fact, I am unable to establish that this characterization is correct. Moreover, as noted in my response to your first question, even assuming certain procedural improprieties may have occurred with respect to board membership — an assumption I am not authorized or situated to test — a finder of fact may well determine that the board's actions are authorized under the doctrine of de facto
officeholding.
As further reflected in the above discussion, without knowing the precise conditions of the transfer, including such factors as the source of the funds, the relative obligations of the parties to each other, and the legal status of the recipient of the funds, I am unable to determine who, if anyone, has the authority to make the proposed transfer. Although by statute a county is authorized to empower a facilities board to contract for the provision of residential housing facilities, A.C.A. §14-137-106, it is questionable that the proposed transfer would qualify as consideration for a contractual obligation. Moreover, as reflected in my response to your previous question, it is likewise questionable whether the funds could be transferred in the form of a gift. Only a finder of fact acquainted with all the attendant circumstances could properly characterize the nature of the proposed transfer and determine whether it would be permissible under applicable law.
Question 4: Since the county foundation has a stated policy of onlymaking loans-grants to organizations, (not Individuals) do their policiesand bylaws comply with the original intent and prescribed use for thismoney?
Again, I am unable to answer this question because I am unaware of precisely what the "original intent" of the local ordinance was, what policy restrictions apply to the Endowment Foundation of Cross County and what use limitations would apply to the funds should the proposed transfer occur. As previously noted, these factual questions are uniquely suited for resolution not by this office, but rather by local counsel acquainted with all of the circumstances.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh