The Honorable Denny Altes State Senator 8600 Moody Road Fort Smith, Arkansas 72903-6718
Dear Senator Altes:
I am writing in response to your request for an opinion on the following:
 I am writing this letter to request clarification of Attorney General's Opinion 2007-275 based on the following questions:
 1. In a City Administrator form of government, can a city director who owned property and who resided and was domiciled in a given ward at the time of the election continue to serve if that director sells his/her property and purchases property in a different ward than the one they were elected to represent?
 2. Does renting an apartment or other rental property with no intent to reside in that property meet the requirements of domicile and residency?
 3. Other than voluntary resignation from the position or a recall election by the voters in the ward, is there an alternative for removal from office if the above situation continues? *Page 2 
RESPONSE
In my opinion, with respect to your first question, a city director elected from a ward in a city administrator form of municipal government must continue to reside within the ward he or she represents to remain eligible to hold that office. Without a statute declaring the seat automatically vacant, however, the individual may continue in office until removed. With respect to your second question, only a court may make factually specific determinations of whether an officer meets the residency or domiciliary requirements to hold office. With respect to your third question, in my opinion, aside from the statutorily authorized recall elections, there are three possible causes of action that may be brought to remove an individual who is ineligible to hold office — a writ of quo warranto, an usurpation action, and a taxpayer lawsuit under the provisions of Article 16, § 13 of the Arkansas Constitution.
You state that you are seeking clarification of Op. Att'y Gen.2007-275. In that opinion request, questions were posed concerning "a person who is elected for a specific city ward and who resides in the ward at the time of the election" but who "no longer physically live[s] in that ward." The requester did not specify any particular form of municipal government to which his question pertained, and I responded with a discussion of the applicable law regarding "aldermen" in the "mayor-council" form of government. I summarized my response by stating:
 In my opinion, whether an alderman has ceased to reside, or be "domiciled," in the ward he or she represents for the purposes of eligibility under A.C.A. §§ 14-43-310 (Repl. 1998) (addressing cities of the first class) or 14-44-103(b)(2) (Supp 2007) (addressing cities of the second class) is a question of fact that can only be determined by all the surrounding circumstances. I have, however, set forth below the general standard for determining the issue. Additionally, I will note that an alderman who has removed his domicile outside the ward that he represents will nonetheless be considered a de facto officer unless removed from office. Actions taken by a de facto officer are valid while he is permitted to retain the office.
Id. at 1-2. *Page 3 
You have now sought clarification of my previous opinion, making clear that your questions refer to a city with the city administrator form of government.
Question One: In a City Administrator form of government, can a citydirector who owned property and who resided and was domiciled in a givenward at the time of the election continue to serve if that directorsells his/her property and purchases property in a different ward thanthe one they were elected to represent?
In my opinion, a city director elected by ward in a city administrator form of municipal government is required to continue to reside within the ward from which he or she is elected to remain eligible to serve as a city director. A director who becomes ineligible for the position, however, may continue to serve as a de facto officer until they are removed from office, as discussed in response to Question Three,infra.
The "residency requirement" for public officials is derived from statutory and constitutional sources. The Arkansas Constitution requires that all persons "elected to, or appointed to fill a vacancy in, any office . . . possess the qualifications of an elector." Ark. Const. art. 19, § 3. The Arkansas Supreme Court has interpreted the requirement of "qualifications of an elector," as used in Article 19, § 3, to include residence in the political subdivision in question, including a municipality. See Benton v. Gunter, 342 Ark. 543, 29 S.W.3d 719 (2000);Davis v. Hall, 304 Ark. 619, 804 S.W.2d 362 (1991); Charisse v.Eldred, 252 Ark. 101, 477 S.W.2d 480 (1972); and Thomas v. Sitton,213 Ark. 816, 212 S.W.2d 710 (1948).[1]
In your request, you have specified that you are concerned with the requirements for continued residency of a city director in a city administrator form of municipal government. See A.C.A. §§ 14-48-101
through-131 (Repl. 1998 Supp. 2007). *Page 4 
With regard to the election of city board members, A.C.A. § 14-48-110
provides in pertinent part as follows:
 (a)(1) The seven (7) directors elected by a city reorganized under this chapter shall be known and designated as the board of directors of the city.
 * * * (b)(1) The positions upon the board shall, for election purposes, be permanently designated as positions, numbered respectively, one, two, three, four, five, six, and seven.
 * * * [(d)](2)(A) In all primary, general, and special elections, each candidate for the office of mayor or director shall be elected by the electors of the city as follows:
 (i) The persons elected to fill director positions one, two, three, and four, respectively, shall be qualified electors of the respective wards and shall be elected by the qualified electors of the respective wards.
 * * * (f)(1) At any primary, general, or special election for the election of the mayor or any director, any adult person who has resided within the municipality for at least six (6) months and is qualified to vote at an election of county or state offices shall be deemed a qualified elector.
 (2) Any person more than twenty-one (21) years of age possessing these same qualifications also shall be eligible to run for the office of mayor or director.
(Emphasis added).
Because you reference a city director who is elected to represent one ward, as opposed to an at-large director, I assume you are asking with regard to "director *Page 5 
positions one, two, three, [or] four," which must be filled by qualified electors of each respective ward and chosen solely by the electors residing within their respective wards. A.C.A. § 14-48-110(d)(2)(A)(i) (Repl. 1998). Subsection (f) imposes additional requirements, including a durational residency requirement.
Both Article 19, § 3, as interpreted, and A.C.A. § 14-48-110(f) clearly require residence in the city to be served. See Op. Att'y Gen.2007-055 (opining that art. 19, § 3 requires residence within the political subdivision to be served). Section 14-48-110(d) adds an additional "residency" requirement for directors one, two, three, and four. That subsection specifically requires those ward-elected directors to be qualified electors of the wards they represent. A more specific statute will control over a general statute addressing the same topic.See Benton, supra. In this instance, the specific requirement in A.C.A. § 14-48-110(d) for ward-elected directors to be qualified electors of their ward will control over the general requirement in subsection (f) that a city director be a qualified elector of the city. Therefore, the "residency requirement" applies to the specific ward from which director one, two, three, or four is elected.
The applicable statute thus requires residence in the ward for the director in question. The question in this instance is whether such residence must exist not only at the time of election or upon assuming the office, but also must be maintained during the term for which the official is elected. I have not found any Arkansas case law expressly addressing this question.
In my opinion, however, A.C.A. § 14-48-110 requires the continued residency of a city director elected by ward in a city administrator form of municipal government. Although the applicable statute, in subsection (f), addresses eligibility of persons to "run" for the office of mayor or director, subsection (d)(2)(A)(i) appears to go further and require the "persons elected" to "be" qualified electors of the respective wards. This language may be reasonably interpreted to refer to service after the election.
Additionally, I am bolstered in my conclusion by A.C.A. §14-48-107(c)(2)(B), which provides evidence that the General Assembly clearly contemplated continuing residency of the directors. Specifically, under this statute, the General Assembly has authorized the continuing service of a ward director whose residence falls outside of his or her ward because of a subsequent redesignation of ward boundaries. Id. This specific authorization to allow a ward director to *Page 6 
continue in office despite losing his or her continuing residency demonstrates that a city director is otherwise subject to a continuing residency requirement.
As a general matter, it has been stated that residence within the district or other political unit is not a necessary qualification of an officer or candidate in the absence of an express constitutional or statutory provisions requiring such residence or that he shall be an elector of the political unit. See 120 A.L.R. 672 ("Residence or inhabitancy within district or other political unit for which he is elected or appointed as a necessary qualification of officer or candidate, in absence of express provision to that effect"). Where a statute or constitution requires it, however, obviously the converse is true. In my opinion, A.C.A. § 14-48-110 is such a statute.
In addition, it is stated at 62 C.J.S. Municipal Corporations § 340 that: "Under some authority, officers are required to continue their residence in the ward or district of appointment or election in order to hold the office." A similar issue was addressed by the Missouri Court of Appeals in State ex rel. Johnson v. Donworth, 127 Mo. App. 377,105 S.W. 1055 (1907). The statute at issue in Johnson provided that "no person shall be an alderman unless he is twenty-one years of age, a citizen of the United States, an inhabitant of the city for one year next preceding the election, and a resident of the ward from which he is elected." The court concluded:
 But this section goes further [than prescribing who shall be eligible for election], and, in our opinion, requires a continuance of those qualifications to entitle one elected alderman to remain in office. If an incumbent should cease to be a citizen of the United States, or a resident of the city, it is conceded he would lose his right to hold office. The requirement that he shall be a resident of the ward from which he is elected is no less imperative, and we think change of residence to another ward disqualifies him to represent the ward by which he was chosen . . .
Id. at 380.
The rationale for such a rule was explained by the Fourth District Court of Appeals of Illinois stating: *Page 7 
 Sound public policy requires that those who represent the local units of government shall themselves be component parts of such units. The purpose of these statutes [requiring residency] is to effectuate this wise policy. And this purpose can only truly be served by requiring such representative to be and remain actual residents of the units which they represent, in contradistinction from constructive residents. A mere constructive resident has no better opportunities for knowing the wants and rightful demands of his constituents, than a non-resident, and is as much beyond the wholesome influence of direct contact with them. The language of these statutes is susceptible of the meaning which requires that the alderman shall be and remain an actual resident of the ward for which he is elected, and such meaning more truly serves the purpose of the statute, and is in no sense repugnant to the context.
People ex rel., etc. v. Ballhorn, 100 Ill. App. 571, 573 (1902).
Absent judicial interpretation or legislative clarification to the contrary, in my opinion a director in a city administrator form of municipal government must continue to reside within the district from which he or she has been elected to be eligible for that position, except as provided under A.C.A. § 14-48-107(c)(2)(B).
The lack of eligibility for that position, however, does not, in my opinion, create an automatic vacancy in the office. Rather, the individual no longer eligible to hold office may remain in office as ade facto officer, as noted in Op. Att'y Gen. 2007-275, unless there is a statutory provision creating an automatic vacancy. The Arkansas Supreme Court has held that a loss of qualification by an officer who was qualified at the time he took office does not create an automatic vacancy in the office. See May v. Edwards, 258 Ark. 871, 529 S.W.2d 647
(1975); and Stafford v. Cook, 159 Ark. 438, 252 S.W. 597 (1923). I have found no provision in the statutes creating an automatic vacancy in the city administrator form of government under the circumstances you describe. An individual who remains in an office that he or she is not eligible to fill would remain a de facto officer until removed from office, in my opinion.
A de facto officer may continue to exercise the power and authority of the office until removed from office. In Op. Att'y Gen. 2007-275, I quoted with approval one of my predecessors describing the status ofde facto officers are follows: *Page 8 
 Similar issues were discussed in Ops. Att'y Gen. 98-128 and 93-031. In each opinion the case of Pennington v. Oliver, 245 Ark. 251, 431 S.W.2d 843 (1968) was cited. The following excerpt from Opinion 98-128 fairly summarizes the applicable law:
 It is well established that the acts of de facto officers are valid. Chronister v. State, 55 Ark. App. 93, 931 S.W.2d 444 (1996); Ops. Att'y Gen. Nos. 97-257; 97-003.
 With regard to this issue, the Pennington court stated:
 [W]e conclude that [the board members in question] were de facto members of the Board, and that their actions were therefore valid. This is in accord with the holdings of this Court in Faucette, Mayor v. Gerlach, 132 Ark. 58, 200 S.W. 279. There we find this statement:
 "A person who enters into an office and under takes the performance of the duties thereof by virtue of an election or appointment, is an officer de facto, though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office. Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, from being an officer de facto with respect to his official acts, in so far as third persons are concerned."
 Pennington, supra, at 254.
 It has also been stated that
 it is generally held that persons having color of title may be regarded as de facto officers, even though legally they are not eligible for the position or do *Page 9 
not possess the statutory qualifications for the office. One duly appointed or elected to an office but who has failed to take the oath required or to execute a bond within the time prescribed, or one whose bond is irregular, is at least a de facto officer so that his acts are valid as to the public.
 67 C.J.S. Officers 269.
 * * *
Op. Att'y Gen. 2001-018 at 3-4 (quoting Op. Att'y Gen. 98-238 at pp. 4-6); see also State v. Ingram, 135 W.Va. 548, 551, 63 S.E.2d 828 (1951) ("In some instances courts in other jurisdictions have adopted the principle that a public officer losing the qualifications for office required by law forfeits his office, upon a judicial determination that such qualifications have been lost").
In response to your first question, therefore, although in my opinion the residency requirement of A.C.A. § 14-48-110 is a continuing one, an ineligible board member may "continue to serve" unless and until removed in the manner provided by law.
Question Two: Does renting an apartment or other rental property withno intent to reside in that property meet the requirements of domicileand residency?
As I have previously explained in Op. Att'y Gen. 2007-275, determinations of residency and domicile are factually specific and properly the province of the courts. The question of domicile is highly dependent on the question of the individual's intent. See id. If a court determines that there is no intent to make the residence a permanent home, then the court may well conclude that the residency requirement is not met. However, such a definitive answer may only be provided by the judiciary and is outside the purview of an official Attorney General's opinion.
Question Three: Other than voluntary resignation from the position ora recall election by the voters in the ward, is there an alternative forremoval from office if the above situation continues? *Page 10 
In my opinion, aside from the recall election authorized in A.C.A. § 14-48-114,[2] there are three possible causes of action to remove someone ineligible to hold an office from such a position: a writ ofquo warranto, an usurpation action brought by the Attorney General's office, or a taxpayer lawsuit under the provisions of Ark. Const. art. 16, § 13.
Aside from the recall election authorized by A.C.A. § 14-48-114 that you reference in your request, an individual who is ineligible for the office of city director may be removed by one of three different causes of action brought in court. In Op. Att'y Gen. 2007-217, I addressed the methods of removing an individual who was ineligible to serve as a member of an Advertising Promotion Commission by quoting one of my predecessors as follows:
 In my opinion, neither the city nor the commission is authorized by the Act or other law to remove a commission member. In the absence of statutory provisions permitting such removal directly by the city or the commission, it is my opinion that there are three possible causes of action that might be employed to remove a member who is ineligible to serve: a quo warranto
proceeding brought by the Attorney General; a usurpation action brought by the Attorney General or the individual, if any, entitled to the commission position; or a taxpayer lawsuit under the provisions of Ark. Const. art. 16, § 13.
 Quo warranto is an ancient proceeding, which may only be brought by the State. See Moody v. Lowrimore, 74 Ark. 421, 86 S.W. 400 (1905).
 The second action, for usurpation, is a statutory action codified at A.C.A. § 16-118-105, and is "in lieu of" a writ of quo warranto. See State ex rel. Robinson v. Jones, 194 Ark. 445, 108 S.W.2d 901 (1937). The statute was enacted to enlarge the remedy formerly afforded by information in the nature of quo warranto, so that a party entitled to the office could also institute the proceeding. See *Page 11 Wheat v. Smith, 50 Ark. 266, 7 S.W. 161 (1887). Where membership on a city commission is at issue, the statute authorizes the Attorney General or the person entitled to the office to institute the proceeding. See A.C.A. §§ 16-118-105(b)(1) and (b)(3)(B).
 The third possible cause of action to remove an ineligible member of a city advertising and promotion commission is a taxpayer suit under the provisions of Ark. Const. art. 16, § 13, sometimes called the "illegal exaction" provision. A somewhat similar action was instituted in White, Governor v. Hankins, 276 Ark. 562, 637 S.W.2d 603 (1982), wherein a gubernatorial appointment to the Arkansas Highway Commission was challenged on grounds that the appointee's residence made him ineligible to serve. The court held that, as the Commission is responsible for spending tax monies, a citizen and taxpayer is entitled under Ark. Const. art. 16, § 13, to bring a action challenging an appointment that might cause the composition of the Commission to be unlawful. See also Spradlin v. Arkansas Ethics Commission, 314 Ark. 108, 858 S.W.2d 684 (1993) (taxpayer suit utilized to challenge an appointment to the Ethics Commission); Beshear v. Ripling, 292 Ark. 79, 728 S.W.2d 170 (1987) (taxpayer suit challenging the payment of salary to one allegedly unlawfully in office); and Jones v. Clark, Attorney General, 278 Ark. 119, 644 S.W.2d 257 (1983) (taxpayer suit challenging the Attorney General's holding of a military position in violation of the Constitution of Arkansas).
Op. Att'y Gen. 95-296 at 7-8 (quoted in Op. Att'y Gen. 2007-217 at 6-7). In my opinion, these methods are also available to remove an individual who is ineligible to hold the office of city director.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Article 19, § 3, which requires "qualified elector" status, has been applied to municipal offices. Thomas v. Sitton, 213 Ark. 816,212 S.W.2d 710. The more straightforward continuing residency requirements of art. 19, § 4, do not mention municipal officers. Although I recently addressed a question concerning whether art. 19, § 3 requires continuing residency of a city attorney within the municipality (see Op. Att'y Gen.2007-302), it is unnecessary to definitively address the constitutional question in this instance in light of the statutory requirements of A.C.A. § 14-48-110, discussed infra.
[2] This section provides that any member of the board of directors of the mayor of a city organized under the city administrator form of municipal government is "subject to removal from the office by the electors qualified to vote for a successor of the incumbent." A.C.A. § 14-48-114(a). No specific reason is required when gathering signatures for the petition for recall. Also, A.C.A. § 14-48-114(b)(5)(A) specifically declares that a vacancy will exist if the majority of voters in the recall election vote to remove the officer. *Page 1